Terri BEAL, Plaintiff,

v.

**WYNDHAM VACATION RESORTS, INC., Defendant.**

No. 12–cv–274–bbc.

United States District Court, W.D. Wisconsin.

June 20, 2013.

Ivan Hannibal, Consumer Rights Law Office, McFarland, WI, Mary Catherine Fons, Fons Law Office, Stoughton, WI, for Plaintiff.

Daniel Alexander Manna, Michael C. Lueder, Timothy Joseph Bucher, Foley & Lardner LLP, Milwaukee, WI, Kevin Douglas Fowler, Foley & Lardner LLP, Orlando, FL, for Defendant.

## OPINION AND ORDER

BARBARA B. CRABB, District Judge.

In this civil action for monetary relief, plaintiff Terri Beal contends that defendant Wyndham Vacation Resorts, Inc. violated the Telephone Consumer Protection Act, 47 U.S.C. § 227, the Wisconsin Consumer Act, Wis. Stat. §§ 427–428, and Wisconsin common law in attempting to collect a debt that plaintiff owed defendant for the purchase of timeshare points. Now before the court are the parties' cross motions for summary judgment. Defendant moved for summary judgment on all plaintiff's claims, dkt. # 47, but later filed a motion to withdraw its arguments regarding plaintiff's claims under the Wisconsin Consumer Act arising from its telephone calls to plaintiff. Dkt. # 82. I will grant defendant's motion to withdraw those arguments. Plaintiff moved for partial summary judgment on her claims under the Wisconsin Consumer Act arising from defendant's actions in a related state court case and its reporting of her debts to credit reporting companies. Dkt. # 43.

For the reasons that follow, I am denying plaintiff's motion in full and I am granting defendant's motion in part and denying it in part. I am denying plaintiff's motion and granting defendant's motion with respect to plaintiff's claims under the Wisconsin Consumer Act and plaintiff's invasion of privacy and private nuisance claims that are premised on defendant's actions in a related state court proceeding because defendant's service of the complaint and procedural mistakes in state court cannot form the basis for a claim under the Wisconsin Consumer Act or common law. I am also denying plaintiff's motion and granting defendant's motion with respect to plaintiff's Wisconsin Consumer Act Claim premised on defendant's telephone calls to plaintiff because that claim is preempted by the Fair Debt Collection Practices Act.

I am denying defendant's motion with respect to plaintiff's invasion of privacy and private nuisance claims premised on defendant's collection call activities from November 2009 to July 2010 because those claims are timely under the continuing violation doctrine. Finally, I am granting

defendant's motion with respect to plaintiff's claims under the Telephone Consumer Protection Act for all calls made before January 8, 2010, because plaintiff consented to defendant's calling her before that date. However, I am denying the motion with respect to calls made after January 8, 2010 and granting summary judgment to plaintiff with respect to those calls, because plaintiff has established that she revoked her consent to be called on that date. I am also awarding plaintiff $14,500 in statutory damages for the calls and prerecorded messages defendant made to plaintiff's cell phone after that date.

## PRELIMINARY MATTERS

Before turning to the parties' motions for summary judgment, there are two evidentiary matters that must be resolved.

### A. *Plaintiff's Motion to Strike Errata Sheets*

Plaintiff has moved to strike errata sheets submitted by defendant in connection with a 30(b)(6) deposition of John Hunt, vice president of collection for Wyndham Consumer Finance. Dkt. # 76. Under Fed.R.Civ.P. 30(e), a witness may have 30 days following the preparation of the deposition transcript to review the transcript and make changes via errata by signing a statement detailing the changes and the reason for making them. Plaintiff contends that the errata sheets are untimely and constitute impermissible material changes to Hunt's testimony for which defendant provided no adequate justification.

Defendant's submission of Hunt's errata sheet was not untimely. Defendant submitted evidence demonstrating that it received Hunt's deposition transcript via electronic mail on February 18, 2013. Martin Aff., dkt. # 80, at ¶ 4; Lueder Aff., dkt. # 79, at ¶ 4. Applying the applicable rules for computing time periods under Fed.R.Civ.P. 6, which allows three extra days if service is made by electronic means, Fed.R.Civ.P. 6(d), defendant's submission of the errata sheets on March 22, 2013 was timely.

The next question is whether Hunt's errata sheet makes impermissible material changes to Hunt's previous deposition testimony. The Court of Appeals for the Seventh Circuit has explained that "a change in substance which actually contradicts the transcript is impermissible [under Fed.R.Civ.P. 30(e) ] unless it can plausibly be represented as the correction of an error in transcription, such as dropping a 'not.'" *Thorn v. Sundstrand Aerospace Corp.,* 207 F.3d 383, 389 (7th Cir.2000). Although plaintiff contends that the errata sheets make changes that clearly contradict Hunt's deposition testimony, plaintiff fails to point to any change that rises to the level of "contradictory" as that term is used in *Thorn.* Rather, the changes defendant submits in the errata sheets seem to focus primarily on topics for which Hunt's knowledge was lacking and for which plaintiff had requested additional information.

Moreover, plaintiff has failed to identify any changes to the 30(b)(6) deposition that are material to the parties' motions for summary judgment. Neither party relies significantly on Hunt's deposition testimony in its summary judgment filings and plaintiff identifies no changes in the errata sheet that are relevant to issues before the court. Therefore, I am denying plaintiff's motion to strike the errata sheets. If plaintiff believes that any of the changes on the errata sheets are material to trial and should be excluded, she may file a motion in limine to exclude specific testimony on the errata sheets.

### B. *Plaintiff's Objections to Defendant's Proposed Findings of Fact Concerning Call Logs*

Defendant maintained a log of the collection calls it made to plaintiff. As part

of its summary judgment materials, defendant submitted the log along with an affidavit of Edgar Trigueros, supervisor of the contract center operations for Wyndham Consumer Finance, Inc., to explain the entries on the log. Trigueros Aff., dkt. # 50. For the most part, plaintiff does not dispute the substance of defendant's proposed facts regarding the call logs, but she does raise several objections as to the admissibility of the logs, the completeness of the logs and Triguero's testimony interpreting the logs.

I conclude that the call logs and notes are admissible under the exception to hearsay for records of regularly conducted activity. Fed.R.Evid. 803(6). Plaintiff has not explained why this exception would not apply. Although Trigueros did not make any of the calls himself or enter any of the notes on the call logs, Trigueros's position allows him to testify with personal knowledge about the preparation of call logs and how defendant's debt collectors enter notes about calls.

With respect to plaintiff's contention that defendant's call records are incomplete and flawed, plaintiff has provided no reason to reject the entirety of the call logs as inaccurate or incomplete and has pointed to no particular entry that she believes is incomplete or flawed.

From the parties' proposed findings of fact and the record, I find that the following facts are undisputed.

## UNDISPUTED FACTS

### A. Timeshare Contract

On July 9, 2009, plaintiff Terri Beal attended a timeshare sales presentation by defendant Wyndham Vacation Resorts in the Wisconsin Dells. After the sales presentation, plaintiff agreed to purchase "timeshare points" from defendant and signed a timeshare contract and other associated documents. The cash price of the timeshare points was $23,970.00. Plaintiff made a down payment of $2,431.90 and financed the rest through a credit contract with defendant, the terms of which were incorporated into the timeshare contract.

The timeshare contract granted defendant a security interest in the real and personal property being purchased by plaintiff and also granted defendant the right to proceed with seller's remedies:

If the Buyer is late with an amount exceeding one full payment for more than 10 days after the scheduled or deferred due date[,] the Buyer will be in default. The Seller will give the Buyer notice in accordance with the Wisconsin Consumer Act of such default and of Buyer's right to cure. After the expiration of said statutory notice period, the Seller may declare due and owing the balance of amount owed, and proceed with Seller's remedies.

Timeshare contract, dkt. # 46–1 at 2.

Shortly after entering into the timeshare contract, plaintiff stopped making payments.

### B. Collection Calls

After plaintiff stopped making payments on the timeshare points, defendant's in-house debt collectors started calling plaintiff to try to make payment arrangements for her account. Defendant called plaintiff using an auto-dialer on three phone numbers, only one of which is relevant to plaintiff's claims. The phone number ending in 4507 is a cell phone number registered to plaintiff. Plaintiff provided the number to defendant when she completed the timeshare contract. Defendant did not attempt to determine whether the phone number was a cell phone number.

Plaintiff did not keep a log of the calls she received and testified that she had no "real sense" of how many times defendant

called her. Defendant's call log records show that defendant first attempted to call plaintiff regarding the 2009 timeshare agreement on November 19, 2009 and continued to call plaintiff until July 9, 2010. (Defendant made additional calls to plaintiff in 2010 and 2011 in connection with a timeshare that plaintiff purchased in 2006. That timeshare and defendant's collection efforts related to it are not at issue in the parties' motions for summary judgment. The facts in this opinion are limited to calls related to the 2009 timeshare.) Defendant's records indicate that it called plaintiff at least 112 times from November 19, 2009 to February 25, 2010 to try to collect money from her and 19 times between February 26, 2010 and July 9, 2010.

Plaintiff did not answer or return any of defendant's telephone calls or messages in 2009. The first and only time a collector spoke with plaintiff about her past due account was on January 8, 2010. During the call, plaintiff refused to make a payment on the contract on the ground that defendant had made misrepresentations to her during its initial timeshare presentation. She also told the collection agent to stop calling her. After January 8, 2010, defendant made 27 calls to plaintiff's cell phone and left two voice messages.

### C. Defendant's State Court Action against Plaintiff

On June 20, 2011, defendant filed a complaint against plaintiff in the Circuit Court for Sauk County. *Wyndham Vacation Resorts, Inc. v. Beal,* Case No. 11–cv–631 (Wis. Sauk Cnty. Cir. Ct. June 20, 2011). Defendant alleged two causes of action: (1) declaration of interest in real estate and (2) strict foreclosure in the alternative to declaration of interest in real estate. Defendant sought a judgment of $21,841.95 in principal, $3,445.98 in interest, a late fee of $25.00 and continuing interest of $8.97 a day. Defendant did not attach a copy of

the timeshare contract to the complaint; instead, it attached an "affidavit of land contract interest" that identified contract numbers, names, points owed and the purchase price of timeshares sold by defendant to various customers, including plaintiff.

On July 1, 2011, a police officer served the complaint on plaintiff at her home. Plaintiff responded to defendant's lawsuit on July 19, 2011, denying defendant's claims and asserting counterclaims against defendant for violation of the Wisconsin Timeshare Act and Wisconsin common law. Plaintiff alleged that defendant made a variety of misrepresentations during the July 9, 2009 sales presentation and failed to provide required documents to her at the time of the sale, among other claims. Defendant filed two answers to plaintiff's counterclaims, both of which included a demand for plaintiff to pay its reasonable attorney fees.

On April 20, 2012, plaintiff filed a motion for summary judgment, seeking dismissal of defendant's state complaint for defendant's failure to attach an accurate copy of the timeshare contract and its failure to send plaintiff a notice of right to cure default 15 days before filing the state complaint. On June 8, 2012, the circuit court granted plaintiff's motion for summary judgment on the ground that defendant failed to send plaintiff a notice of right to cure default. The circuit court did not address plaintiff's argument regarding defendant's failure to attach the timeshare contract.

### D. Procedural Posture

On April 18, 2012, plaintiff filed her complaint in this court, contending that defendant and its lawyers in its state case violated federal and state law in connection with their efforts to collect plaintiff's debt. On August 16, 2012, plaintiff settled her claims against some of defendant's lawyers for

$19,000 and on September 25, 2013, she settled her claims against defendant's other lawyers for $5,000.

Plaintiff's amended complaint, filed on July 26, 2012, is the operative pleading. Plaintiff asserts claims for violations of Wisconsin Consumer Act, Wis. Stat. ch. 427, Wisconsin law regarding first lien real estate loans, Wis. Stat. ch. 428, the Telephone Consumer Protection Act, 47 U.S.C. § 227, and Wisconsin's privacy and private nuisance law.

## OPINION

### A. *Wisconsin Consumer Act Claims*

Plaintiff is pursuing three theories of liability under the Wisconsin Consumer Act. First, plaintiff contends that defendant's collection call activities violated the Act. Although defendant moved for summary judgment on this claim, arguing that the claim is barred by the applicable statute of limitations, defendant later withdrew that argument on the ground that it discovered records of phone calls made to plaintiff in August 2011 regarding plaintiff's 2006 timeshare. Dkt. # 82. Plaintiff did not move for summary judgment on this theory. Therefore, plaintiff's Wisconsin Consumer Act claims premised on defendant's collection calls remain for trial.

Plaintiff's second theory is that defendant violated the Act by failing to notify credit reporting agencies that plaintiff disputed the alleged debt to defendant. Both parties moved for summary judgment on this claim. In its motion, defendant argued that the claim is preempted by the Fair Credit Reporting Act. 15 U.S.C. § 1681t(b)(1)(F) (preempting state law "relating to the responsibilities of persons who furnish information to consumer reporting agencies"); *Purcell v. Bank of America*, 659 F.3d 622, 625 (7th Cir.2011) (holding that state law claims related to

credit reporting were preempted by Fair Credit Reporting Act). Plaintiff failed to respond to defendant's preemption arguments, thereby conceding that this claim is preempted and waiving any argument in response. *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir.2010) ("Failure to respond to an argument ... results in waiver."). Therefore, I am denying plaintiff's motion on this issue and granting defendant's.

Plaintiff's third theory is that defendant violated the Act by filing the state court foreclosure action. The parties agree that plaintiff's timeshare purchase is governed by Wisconsin's laws regarding first lien real estate loans, Wis. Stat. ch. 428. *Ott v. Peppertree Resort Villas, Inc.*, 2006 WI App 77, ¶ 30, 292 Wis.2d 173, 195, 716 N.W.2d 127, 138 (holding that Wis. Stat. ch. 428 applies to sale of timeshare on credit). That chapter prohibits creditors from engaging in certain conduct in relation to real estate loans, and in particular, prohibits creditors from engaging "in conduct of the type prohibited by s. 427.104(1)(a) to (L)" of the Wisconsin Consumer Act. Wis. Stat. § 428.103(1)(c)1. In turn, § 427.104(1) prohibits debt collectors from engaging in various threatening or harassing practices in the context of attempting to collect a debt. Relevant to this case, Wis. Stat. § 427.104(1)(j) prohibits debt collectors from "claim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."

Plaintiff contends that defendant violated this provision during the state court litigation in *Wyndham Vacation Resorts, Inc. v. Beal*, Case No. 11–cv–631 (Wis. Sauk Cnty. Cir. Ct., filed June 20, 2011), by (1) failing to attach a copy of the timeshare contract to the state court complaint; (2) failing to provide plaintiff a proper notice of right to cure default 15 days

before filing suit; (3) making false allegations in the state court complaint; and (4) asking for attorney fees in response to plaintiff's counterclaims. Both parties moved for summary judgment on these claims.

### 1. *Failure to attach timeshare contract and failure to provide notice of right to cure default*

Plaintiff's first two theories can be considered together. With respect to her theory that defendant violated the Wisconsin Consumer Act by failing to attach the timeshare contract to the state complaint, plaintiff cites Wis. Stat. § 428.105, which requires creditors to attach an "accurate copy of the writing evidencing the transaction" to a complaint filed by a creditor to enforce its rights. Plaintiff argues that because defendant did not attach a copy of the timeshare contract, it violated § 427.104(1)(j) because it did not have the "right" to file a complaint against plaintiff without providing a copy of the timeshare contract with the complaint. Thus, plaintiff argues, defendant was attempting to "enforce a right with knowledge or reason to know that the right d[id] not exist."

As for plaintiff's second theory, plaintiff contends that defendant violated Wis. Stat. §§ 428.103(1)(c)1 and 427.104(1)(j) by failing to send her a notice of right to cure default at least 15 days before filing the state court lawsuit. Under the timeshare contract, defendant was required to provide plaintiff a notice of default "in accordance with the Wisconsin Consumer Act of such default and of Buyer's right to cure" before suing plaintiff. Timeshare contract, Dkt. # 46–1 at 2. Under the notice of default and buyer's right to cure provisions of the Wisconsin Consumer Act, Wis. Stat. §§ 425.104, 425.105, defendant was required to send plaintiff a notice of right to cure default, containing all of the information listed in § 425.104(2), at least 15 days before filing suit. Wis. Stat. § 425.105(1). Plaintiff contends that because defendant filed the state court lawsuit without providing plaintiff a proper notice and right to cure, it attempted to enforce a right that "did not exist," in violation of §§ 427.104(1)(j) and 428.103(1)(c)1.

▪ Plaintiff cannot sustain a claim under the Wisconsin Consumer Act under either of these theories. The requirements that a creditor attach an accurate copy of the writing evidencing a transaction with the complaint is a pleading requirement. Wis. Stat. § 428.105 (titled "pleadings" and describing the complaint requirements of a creditor pursuing a cause of action). Similarly, the requirement that a creditor provide a notice of right to cure default is a procedural hurdle creditors must clear in order to pursue their remedies. Wis. Stat. § 425.105 (concerning "creditor remedies" and describing condition precedent for filing suit). The purpose of the notice of right to cure "is to give the customer an opportunity, before the merchant accelerates the obligation, to restore his or her loan to a current status and thus preserve the customer-merchant relationship." *Rosendale State Bank v. Schultz*, 123 Wis.2d 195, 199, 365 N.W.2d 911, 913 (Ct.App.1985). Plaintiff cites no authority to support her position that the purpose of these provisions is to create a separate cause of action for debtors and has cited no cases in which a debtor was permitted to bring a private right of action under the Wisconsin Consumer Act for a creditor's failure to comply with these requirements. Instead, the appropriate remedy for a creditor's failure to comply with these procedural requirements is dismissal of the creditor's action, which is what happened to defendant's action against plaintiff in the Circuit Court for Sauk County. In other words, plaintiff

has already received the relief to which she is entitled under these provisions.

The cases cited by plaintiff do not suggest otherwise. In *Indianhead Motors v. Brooks*, 2006 WI App 266, 297 Wis.2d 821, 726 N.W.2d 352, the court held only that the debt collector's action for replevin should have been "dismissed without prejudice" because the debt collector failed to give proper notice to the creditor of her right to cure under the Wisconsin Consumer Act. *Id.* at ¶ 1. The court did not hold that the creditor had no "right" to collect the outstanding loan balance, simply that the creditor could not enforce its right because it failed to provide a proper notice of default and right to cure before doing so. In *Nelson v. Santander Consumer USA, Inc.*, 931 F.Supp.2d 919, 932–34 (W.D.Wis.2013) (vacated on June 7, 2013), the plaintiff brought a claim premised on the defendant's failure to provide a proper notice of default, but that claim arose under provisions of the Wisconsin Consumer Act dealing specifically with a merchant's taking possession of collateral or goods. Wis. Stat. §§ 425.206; 425.305. Those provisions are inapplicable in this case. *See also Credit Acceptance Corp. v. Chao Kong*, 2012 WI App 98, ¶ 18, 344 Wis.2d 259, 267, 822 N.W.2d 506, 510 (affirming decision that customer could retain vehicle and money she had paid creditor in accordance with § 425.305 because creditor repossessed customer's vehicle without providing proper notice of default, but reversing award of damages to customer under Wis. Stat. § 427.104 because neither circuit court nor customer explained adequately how creditor had violated that provision).

In sum, there is no dispute that plaintiff entered into a timeshare contract with defendant, that she stopped making payments on it and that the contract allowed defendant to pursue certain remedies in the case of default. The fact that defendant failed to take the necessary steps in pursuing these remedies provided plaintiff valid defenses to defendant's state action. However, defendant's mistakes do not mean that it attempted to enforce a right it did not have. Accordingly, I am denying plaintiff's motion and granting defendant's motion for summary judgment as to plaintiff's Wisconsin Consumer Act claims premised on defendant's failure to attach an accurate copy of timeshare contract to the state complaint and failure to send plaintiff a notice of right to cure default.

### 2. *False allegations*

Plaintiff contends that defendant violated the Wisconsin Consumer Act by making false allegations in its state court complaint. In particular, plaintiff contends that defendant alleged falsely that the timeshare contract contained default and remedy provisions allowing quiet title and foreclosure actions that were not actually contained in the timeshare contract. Plaintiff points to the following specific statements in defendant's state court complaint:

> The Land Contract provides that in the event of default, [Wyndham] may declare the Land Contract at an end and remove the Land Contract as a cloud on title in a quiet title action ("Declaration of Interest in Real Estate") if Purchaser's interest is insignificant.
>
> * * *
>
> The Land Contract provides that in the event of default, [Wyndham] may terminate the Land Contract and Purchaser's interest in the Real Estate and recover the Real Estate through a strict foreclosure.

Dkt. # 46–2 at ¶¶ 6, 11.

■ These statements made in the state action cannot provide the basis for a claim

against defendant in this court. Although the timeshare contract did not state specifically that defendant could seek quiet title or foreclosure against plaintiff in the event of default, there is no dispute that the timeshare contract contained a default provision that provided "seller remedies" to defendant. Plaintiff does not suggest what those "remedies" might be and has not suggested that this court should engage in contract interpretation to determine whether defendant could seek quiet title or foreclosure as a remedy. Dkt. # 46–1 at 2. Under Wisconsin law, traditional remedies for breach of a real estate contract include (1) recovery of unpaid purchase price; (2) specific performance; (3) quiet title; (4) ejectment; and (5) foreclosure. *Kallenbach v. Lake Publications, Inc.*, 30 Wis.2d 647, 651–52, 142 N.W.2d 212 (1966). Defendant's assumption that it could seek these traditional remedies does not amount to a violation of the Wisconsin Consumer Act.

### 3. Request for attorney fees

Finally, plaintiff contends that defendant violated the Wisconsin Consumer Act by seeking attorney fees from plaintiff in its responses to her counterclaims in the state court action. Plaintiff cites Wis. Stat. § 428.103(1)(e), which applies to "all loans subject to" chapter 428 (first lien real estate loans) and prohibits a creditor from "contract[ing] for or charg[ing]" attorney fees to a customer. Specifically, it provides that

(1) The following limitations shall apply to all loans subject to this subchapter:

\* \* \*

(e) The creditor shall not contract for or charge its attorney fees to the customer except as follows:

1. Reasonable fees for opinions of title.
2. In foreclosure cases, 5% of the amount adjudged due the creditor; or if

the dispute is settled prior to judgment, a reasonable fee based on the time, nature and extent of the work involved, but not to exceed 2 ½ % of the unpaid principal balance of the loan.

Wis. Stat. § 428.103(1)(e). "A creditor who commits a violation of this section is liable" to the debtor for statutory or actual damages. *Id.* § 428.103(2).

■ Plaintiff cannot sustain a claim under § 428.103(1)(e) and recover damages under § 428.103(2) because it is undisputed that defendant never "contract[ed] for or charge[d]" plaintiff attorney fees. There is no provision in the timeshare or financing agreement stating that plaintiff would have to pay attorney fees and plaintiff was never required to pay or "charged" attorney fees as part of the state court action.

■ Plaintiff also cannot sustain a claim under § 427.104(1)(j) on the ground that defendant sought to enforce a right it did not have by seeking attorney fees in the state court action. Although defendant asked for attorney fees in response to plaintiff's counterclaims, defendant did not seek to "contract for" or "charge" plaintiff attorney fees in the context of the timeshare contract or financing agreement. Plaintiff has cited no authority to support her argument that § 428.103(1)(e) would prohibit a creditor from seeking attorney fees from a court in response to counterclaims filed by a debtor; rather the only cases involving this provision make it clear that it applies to situations in which the creditor includes attorney fees as part of the real estate contract or seeks attorney fees from the debtor as the result of a foreclosure action. *E.g., Agribank, FCB v. Malueg*, 197 Wis.2d 117, 541 N.W.2d 838 (Ct.App.1995) (unpublished) (holding that § 428.103(1)(e) applied to situation in which creditor conditioned reinstatement

of loan contract on debtor's payment of attorney fees); *Fellenz v. Gonring*, 113 Wis.2d 228, 231, 335 N.W.2d 884, 885 (Ct. App.1983) (explaining that § 428.103(1)(e) applies to contractual provisions regarding attorney fees). Accordingly, I am denying plaintiff's motion for summary judgment on this theory and granting defendant's.

### B. *Plaintiff's Invasion of Privacy and Private Nuisance Claims*

Plaintiff has asserted invasion of privacy and private nuisance claims premised on defendant's collection calls and service of the state court complaint. Defendant has moved for summary judgment on these claims, contending that the majority of calls are time-barred and the 19 unanswered calls and the voice messages that fall within the statute of limitations are not sufficient, on their own, to support claims for invasion of privacy or private nuisance.

#### 1. *Service of state complaint*

■ Plaintiff cannot sustain a claim for invasion of privacy or private nuisance premised on defendant's service of the state court complaint at her home. Plaintiff did not plead this claim in her amended complaint. Even if she had, the simple service of a complaint is insufficient in itself to support a claim for either invasion of privacy or private nuisance.

Under Wisconsin law, an invasion of privacy includes "[i]ntrusion upon the privacy of another of a natural highly offense to a reasonable person, in a place that a reasonable person would consider private or in a manner which is actionable for trespass." Wis. Stat. § 995.50. "The test is an objective one: whether a reasonable person would find the intrusion highly offensive." *Gillund v. Meridian Mutual Insurance Co.*, 2010 WI App 4, ¶ 29, 323 Wis.2d 1, 778 N.W.2d 662.

■ "[A] private nuisance [i]s an unreasonable interference with the interests of an individual in the use of enjoyment of land." *Abdella v. Smith*, 34 Wis.2d 393, 398, 149 N.W.2d 537, 539 (1967) (citation omitted). The interference with enjoyment must be "substantial." *Id.; Laska v. Steinpreis*, 69 Wis.2d 307, 320, 231 N.W.2d 196, 203 (1975). Like invasion of privacy, the issue of whether the interference was substantial is an objective inquiry. *Bauder v. Delavan–Darien School Dist.*, 207 Wis.2d 310, 317–18, 558 N.W.2d 881, 884 (Ct.App.1996).

Although plaintiff may have been upset when a police officer served her with a complaint at her home, no reasonable person would conclude that such conduct was "highly offensive" or constituted a "substantial interference" with the enjoyment of her property. *E.g., Gamble v. Fradkin & Weber, P.A.*, 846 F.Supp.2d 377, 384 (D.Md.2012) (dismissing invasion of privacy claim where plaintiff did not allege that "the process server conducted himself or herself in a highly offensive manner when he or she served [plaintiff] with process"); *Stefanski v. Kammeyer*, 1:08–CV–103 RM, 2008 WL 4452346, at *2 (N.D.Ind. Sept. 30, 2008) (dismissing privacy claims based on process server's leaving copy of complaint and summons at plaintiff's home). Therefore, I am granting defendant's motion for summary judgment with respect to plaintiff's invasion of privacy and private nuisance claims premised on the service of the complaint.

#### 2. *Collection calls and statute of limitations*

This leaves the question whether plaintiff's invasion of privacy and private nuisance claims premised on defendant's collection calls are barred by the applicable statute of limitations. Under Wis. Stat. § 893.57, "[a]n action to recover damages

for libel, slander, assault, battery, invasion of privacy, false imprisonment or other intentional tort to the person shall be commenced within 3 years after the cause of action accrues or be barred." However, this section was amended in February 2010 and became effective only on February 26, 2010. Prior to February 26, 2010, the statute of limitations period for invasion of privacy claims was two years. Wis. Stat. § 893.57(2010). (It is not clear that the statute of limitations in § 893.57 applies to both the invasion of privacy and private nuisance claims. Some courts have applied the six-year limitations period in Wis. Stat. § 893.52 to private nuisance claims. *E.g., Gumz v. North. States Power Co.,* 2006 WI App 165, ¶ 10, 295 Wis.2d 600, 614, 721 N.W.2d 515, 521 (Ct.App. 2006) ("WISCONSIN STAT. § 893.52 provides a six-year limitations period for negligence and nuisance claims.") (internal citation and quotation marks omitted)). However, plaintiff does not argue that the six-year limitation period should apply to her nuisance claims so I will not consider that issue.)

Defendant contends that because plaintiff did not file this suit until April 18, 2012, plaintiff's invasion of privacy and private nuisance claims premised on calls occurring before February 26, 2010 fall outside the statute of limitations period. If defendant is correct, plaintiff's claims would be limited to the calls and voice messages occurring on or after February 26, 2010.

 I need not determine whether the post-February 26, 2010 calls and voice messages could sustain a privacy or nuisance claim on their own because I agree with plaintiff that defendant's calls from November 2009 to July 2010 constituted a continuing violation and thus, the calls she received after February 26, 2010 satisfy the statute of limitations. "The continuing

violation doctrine acts as a defense to the statute of limitations, delaying its accrual or start date." *Kovacs v. United States,* 614 F.3d 666, 676 (7th Cir.2010) (citation omitted). The doctrine applies in situations in which a claim is premised on the cumulative effect of individual, repeated acts, with the last event being timely. *National Railroad Passenger Corp. v. Morgan,* 536 U.S. 101, 115–16, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002) (applying doctrine to hostile work environment claim and distinguishing unlawful conduct "occur[ring] over a series of days or perhaps years" from "discrete acts" actionable on their own). *See also Heard v. Sheahan,* 253 F.3d 316, 319 (7th Cir.2001) ("A violation is 'continuing,' signifying that a plaintiff can reach back to its beginning even if the beginning lies outside the statutory limitations period, when it would be unreasonable to require or even permit him to sue separately over every incident of the defendant's unlawful conduct."). In such situations, courts may consider actions taken outside the statutory time period, so long as an act contributing to the claim takes place within the statutory time period. *Morgan,* 536 U.S. at 117, 122 S.Ct. 2061.

Whether the continuing violation doctrine should apply to plaintiff's invasion of privacy and private nuisance claims is an issue of Wisconsin law. *Northfield Insurance Co. v. City of Waukegan,* 701 F.3d 1124, 1133 (7th Cir.2012) (applying Illinois law to determine whether continuing violation doctrine applied to Illinois tort claim); *Hukic v. Aurora Loan Services,* 588 F.3d 420, 436 (7th Cir.2009) (same). It is clear that the doctrine of continuing violation can apply to nuisance claims under Wisconsin law. *Sunnyside Feed Co., Inc. v. City of Portage,* 222 Wis.2d 461, 466, 588 N.W.2d 278, 281 (Wis.Ct.App.1998). As the Wisconsin Court of Appeals explained, "[i]f a nuisance is 'continuing,' " that is, "if

it can be discontinued or abated, or if it is an ongoing or repeated disturbance," then the claim "is not barred by a statute of limitations." *Id. See also Andersen v. Village of Little Chute*, 201 Wis.2d 467, 487, 549 N.W.2d 737, 745 (Wis.Ct.App.1996) ("An action for a continuing [nuisance] injury may be maintained beyond the ordinary statute of limitations.").

Additionally, although I found no cases discussing whether the continuing violation doctrine can apply in privacy cases, I conclude that it is appropriate to apply the doctrine to plaintiff's claims in this case. In applying the doctrine, the Wisconsin courts have not suggested that its application depends on the particular claim asserted. Rather, they have explained that the doctrine applies to claims premised on a continuing course of related acts that cause injury to the plaintiff, as opposed to several separate, discrete events that would be actionable by themselves. *E.g., Kolpin v. Pioneer Power & Light Co., Inc.*, 162 Wis.2d 1, 23, 469 N.W.2d 595, 604 (1991) (holding that continuing violation doctrine did not apply because plaintiff's claim was premised on "one act of negligence" rather than "series" of continuing negligent acts); *Tamminen v. Aetna Casualty & Surety Co.*, 109 Wis.2d 536, 558–59, 327 N.W.2d 55, 65 (1982)(continuing violation doctrine applied because "entire course of conduct" at issue (medical negligence) should be viewed as "a unitary episode" rather than discrete acts); *In re Gerhard G. Poehling Family Trust u/a*, 348 Wis.2d 763, No. 2012AP1817, 2013 WL 2088946, at *40 (Wis.Ct.App. May 16, 2013) (continuing violation does not apply to discrete acts, which are acts that "occurred independently, could be distinguished on an individual basis, and had corresponding, ascertainable injuries"); *Bowen v. Labor & Indus. Review Commission*, 2007 WI App 45, ¶¶ 14–16, 299 Wis.2d 800, 813–14, 730 N.W.2d 164, 170–71 (applying doctrine to harassment claim brought under Wisconsin Fair Employment Act on ground that claim was based on cumulative effect of individual acts).

In this case, plaintiff's privacy and nuisance claims are premised on a pattern of debt collection calls, occurring at least 100 times in an eight-month period. Although the first few calls or last few calls may not be actionable on their own, plaintiff's claims are premised specifically on the repetition of the calls. She is not alleging that any discrete call was a nuisance or invasion of her privacy; rather, it is the quantity and continuing nature of the calls that provide the basis for plaintiff's claims.

In response, defendant contends that the continuing violation doctrine does not apply because this court has already determined in *Jacobson v. Consumer Portfolio Services, Inc.*, No. 10–cv–643–bbc (W.D.Wis. Feb. 28, 2011) (available at dkt. # 48–1 in this case), that the continuing violation doctrine does not apply to invasion of privacy claims under Wisconsin law premised on collection calls. In that case, I dismissed as time-barred the plaintiff's claims based on calls occurring before the two-year period of limitations set forth in Wis. Stat. § 893.57. However, the plaintiff in *Jacobson* did not raise the continuing violation doctrine as a defense to the statute of limitations. *Hukic*, 588 F.3d at 435 (continuing violation doctrine is "defense" to statute of limitations). Because the continuing violation doctrine was not presented to the court, I had no reason to consider its application. Therefore, *Jacobson* is not instructive on this issue.

Defendant also cites several cases in which courts declined to apply the continuing violation doctrine to claims under the Fair Debt Collection Procedure Act and other laws. However, these cases are distinguishable because they involved discrete

wrongs rather than a series of acts considered collectively like the pattern of debt collection calls at issue in this case. *E.g., Rodrigue v. Olin Employees Credit Union*, 406 F.3d 434, 443 (7th Cir.2005) (refusing to apply doctrine to embezzlement case because "a cause of action for conversion arose each time [employee] cashed or deposited one of the [269] checks she had embezzled"); *Hukic*, 588 F.3d at 436 (doctrine did not apply to defamation claim because "the multiple reports ... to the consumer reporting agencies constituted separate, discrete acts, even one of which would have given rise to a cause of action"); *Schaffhauser v. Citibank (S.D.) N.A.*, 340 Fed.Appx. 128, 131 (3d Cir.2009) (unpublished) (refusing to apply doctrine to ongoing debt collection litigation where state court complaint was filed four years before filing of fair debt collection action); *Wilhelm v. Credico, Inc.*, 455 F.Supp.2d 1006, 1009 (D.N.D.2006) (rejecting "serial violations" theory premised on alleged credit reporting violations); *Kirscher v. Messerli & Kramer, P.A.*, No. Civ. 05–1901PAMRLE, 2006 WL 145162, at *5 (D.Minn. Jan. 18, 2006) (refusing to apply doctrine to fair debt collection claim premised on misrepresentations by law firm defendants, but contrasting allegations with ones in which "defendants have sent a series of threatening letters"); *Egbarin v. Lewis, Lewis & Ferraro LLC*, No. Civ. A. 3:00–CV–1043, 2006 WL 236846, at *10 (D.Conn. Jan. 31, 2006) (distinguishing "pervasive pattern of phone calls" in other cases from "dissimilar, discrete acts" at issue in that case).

In fact, at least two other courts have applied the continuing violation doctrine to cases involving a pattern of allegedly harassing phone calls. *E.g., Tucker v. Mann Bracken, LLC*, No. 1:08–CV–1677, 2009 WL 151669, at *4 (M.D.Pa. Jan. 21, 2009) (holding that fair debt collection claims premised on alleged telephone calls which "continued unabated" from 2005 to 2008 were part of continuing violation and not barred by statute of limitations); *Joseph v. J.J. Mac Intyre Companies, LLC*, 281 F.Supp.2d 1156, 1160 (N.D.Cal.2003) (applying continuing violation to debt collection claims under Fair Debt Collection Practices Act because allegations concerned pattern of repeated calls).

Finally, defendant argues that plaintiff cannot rely on the continuing violation doctrine because plaintiff was or should have been aware of her privacy and nuisance claims well before the expiration of the statute of limitations. Dft.'s Reply Br., dkt. #73, at 12. However, this argument conflates the continuing violation doctrine with the discovery rule. As the Wisconsin Supreme Court explained in *Kolpin*, 162 Wis.2d at 24, 469 N.W.2d 595, a cause of action accrues once is it "complete." *Id.* at 24, 469 N.W.2d 595. The court went on to explain that a cause of action "is complete when the negligent act occurs, or the last act occurs in a continuum of negligent acts...." The statute of limitations begins to run when a claim accrues, which in this case, was when defendant made its last call to plaintiff. Thus, because defendant continued to call plaintiff from November 2009 to July 2010, the statute of limitations did not begin to run until July 2010.

Defendant has not argued that plaintiff cannot sustain claims for nuisance or invasion or privacy on the basis of the 100–plus calls she received during the November 2009 to July 2010 period. Therefore, I do not consider this issue. Plaintiff's privacy and nuisance claims premised on defendant's calls must be resolved at trial.

### C. Telephone Consumer Protection Act Claims

Plaintiff contends that defendant's calls to her cellular phone through its autodialer system violated the Telephone Consumer

Protection Act, 47 U.S.C. § 227(b)(1)(A)(iii), which makes it

> unlawful for any person . . . to make any call (other than a call . . . made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service . . . or any service for which the called party is charged for the call.

Section 227(b)(3) provides a private right of action for individuals to receive $500 in damages for each such violation plus treble damages if the defendant "willfully or knowingly violated this subsection." There is no dispute that defendant used an automated telephone dialing system to call plaintiff's cellular phone. However, defendant contends that plaintiff cannot succeed on this claim because she gave "prior express consent" for defendant to call her cell phone.

In response, plaintiff concedes that she gave defendant consent to call her cell phone by providing the number to defendant as part of the timeshare contract and associated documents. Plt.'s Br., dkt. # 66, at 49. The Federal Communications Commission has determined that "the provision of a cell phone number to a creditor . . . reasonably evidences prior consent by the cell phone subscriber to be contacted at that number regarding the debt." In re Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991, 23 FCC Rcd 559, ¶¶ 9–10 (Jan. 4, 2008). Courts have applied this rule routinely to hold that providing a cellular number constitutes consent. *E.g., Cavero v. Franklin Collection Service,* No. 11–22630–CIV, 2012 WL 279448, at *3 (S.D.Fla. Jan. 31, 2012); *Adamcik v. Credit Control Services,* 832 F.Supp.2d 744, 748 (W.D.Tex.2011). Plaintiff also concedes that she cannot sustain a claim premised on defendant's calls made before January 8, 2010. However, plaintiff contends that she revoked that consent in a January 8, 2010 telephone conversation with a collections agent.

The Telephone Consumer Protection Act does not address whether or how prior express consent to receive autodialer calls may be revoked, once given. Also, although the Federal Communications Commission regulations implementing and interpreting the Act require "telemarketers" to provide automatic opt-out procedures to consumers for automated calls, the Commission has stated specifically that the required procedures do not apply to "debt collection" calls and has provided no guidance on the availability or appropriate form of revocation for autodialer calls involving debt collection. Rules and Regulations Implementing the TCPA of 1991, 77 FR 34233–01 (June 11, 2012) ("While a few commenters assert that the Commission should apply the automated, interactive opt-out requirement to non-telemarketing and telemarketing calls alike, the Commission declines to do so at this time because the record does not reveal a level of consumer frustration with non-telemarketing calls that is equal to that for telemarketing calls.").

Neither the Court of Appeals for the Seventh Circuit nor any other federal appellate court has considered the issue of consent revocation, and the district courts that have considered the issue have reached varying conclusions. Some courts have concluded that once customers provide consent, it cannot be revoked. *E.g., Saunders v. NCO Financial Systems, Inc.,* 910 F.Supp.2d 464, 469–70 (E.D.N.Y.2012); *Gager v. Dell Financial Services, LLC,* 3:11–CV–2115, 2012 WL 1942079, *4–5 (M.D.Pa. May 29, 2012). These courts concluded that because neither the Telephone Consumer Protection Act nor any

Federal Communications Commission regulation or advisory opinion construing the statute contains any provision allowing revocation of consent, revocation was not possible. Other courts have concluded that consent can be revoked, but only through writing. *E.g., Starkey · v. Firstsource Advantage, LLC,* 2010 WL 2541756, *5–6 (W.D.N.Y. Mar. 11, 2010); *Cunningham v. Credit Management, L.P.,* 2010 WL 3791104, *5 (N.D.Tex. Aug. 30, 2010); *Moore v. Firstsource Advantage, LLC,* 2011 WL 4345703, *11 (W.D.N.Y. Sept. 15, 2011); *Moltz v. Firstsource Advantage, LLC,* 2011 WL 3360010, *6 (W.D.N.Y. Aug. 3, 2011); *Sengenberger v. Credit Control Services, Inc.,* 2010 WL 1791270, *4 (N.D.Ill. May 5, 2010). In those cases, the courts relied on the fact that the cases involved debt collection calls and that the Fair Debt Collection Practices Act generally applies to debt collection. Under that Act, a debtor can ask a debt collector to cease and desist collection effects, but the request must be in writing. 15 U.S.C. § 1692c(c). The courts concluded that because the cases were essentially about debt collection, the writing requirement of the Fair Debt Collection Practice Act should apply.

At least two courts have concluded that consent under the Telephone Consumer Protection Act can be revoked orally or in writing. In *Gutierrez v. Barclays Group,* 2011 WL 579238, *3–4 (S.D.Cal. Feb. 9, 2011), the court concluded that a consumer can revoke consent given under the Act orally or in writing because the statute does not require revocation to be in writing. *Id.* at *4. Additionally, the court concluded that because consumers can provide consent orally, they should be permitted to revoke consent to receive autodialer calls orally. *Id.* The court did not address the threshold question raised by defendant in this case, which is whether consent to autodialed debt collection calls can be re-

voked at all under the Act. Rather, the court and parties seemed to assume that revocation was possible. In *Adamcik,* 832 F.Supp.2d at 749–53, the court relied on common law principles to conclude that consumers may revoke consent to receive autodialer calls under the Telephone Consumer Protection Act and that they may do so orally or in writing. The court also rejected the reasoning from those courts suggesting that the writing requirements of the Fair Debt Collection Practices Act should apply to revocation of consent under the Telephone Consumer Protection Act.

 I agree with the court's reasoning in *Adamcik* and conclude that consumers have the right to revoke consent to receive autodialed calls under the Telephone Consumer Protection Act and that they may do so orally or in writing. Although neither the text of the Act nor its legislative history addresses the possibility of revoking prior express consent, a traditional understanding of "consent" includes the possibility of revocation. Under common law, "[c]onsent is a willingness in fact for conduct to occur," *Restatement (Second) of Torts* § 892, and "consent is terminated when the actor knows or has reason to know that the other is no longer willing for him to continue the particular conduct." *Id.* § 892A, cmt. i. "This unwillingness may be manifested to the actor by any words or conduct inconsistent with continued consent...." *Id. See also Restatement (Second) of Torts* § 171(b) (under traditional trespass theory, "actor's privilege to enter land created by consent of the possessor is terminated by ... a revocation of the possessor's consent, of which the actor knows or has reason to know").

 It is a well-established rule of statutory interpretation that "[w]here Congress uses terms that have accumulated

settled meaning under ... the common law, a court must infer, unless the statute otherwise dictates, that Congress means to incorporate the established meaning of these terms." *Neder v. United States*, 527 U.S. 1, 21, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999). *See also Microsoft Corp. v. i4i Ltd. Partnership*, —— U.S. ——, 131 S.Ct. 2238, 2246, 180 L.Ed.2d 131 (2011) ("[G]eneral rule [is] that a common-law term comes with its common-law meaning."). Additionally, "where Congress borrows terms of art in which are accumulated the legal tradition and meaning of centuries of practice," it is also presumed that Congress "knows and adopts the cluster of ideas that were attached to each borrowed word in the body of learning from which it was taken ... unless otherwise instructed." *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 96 L.Ed. 288 (1952). *See also Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 108, 111 S.Ct. 2166, 115 L.Ed.2d 96 (1991) (common law principles apply to statutory interpretation "except when a statutory purpose to the contrary is evident") (citation omitted). This means that, "in the absence of contrary direction," *id.*, I must assume that Congress intended that "prior express consent" in the Telephone Consumer Protection Act would have the same meaning it does in the common law, including the notion of revocation "attached" to common law consent.

Defendant has cited nothing in the statute or legislative history that would support a conclusion that Congress intended "consent" to have a meaning other than the traditional understanding of consent which encompasses revocation. The only statutory language defendant cites is the provision of the Telephone Consumer Protection Act regarding faxed advertisements (the Junk Fax Prevention Act of 2005). Under the facsimile advertising rules, senders of unsolicited faxed advertisements must provide a notice to the recipient informing it that it may opt out of future advertisements and instructions about how to do so. 47 U.S.C. § 227(b)(2)(D). In turn, if a recipient wishes to opt out of unsolicited faxed advertisements, the recipient must submit a request to the number provided on the faxed advertisement, identifying the fax machine number that received the unsolicited fax. 47 U.S.C. § 227(b)(2)(E). Defendant cites these provisions as evidence that Congress knows how to provide for revocation of consent when it wants to.

The fact that Congress required advertisers to follow specific guidelines to notify fax recipients of the procedure to opt out and gave recipients specific guidelines about how to do so does not alter the meaning of "consent" as used in the statute generally. First, the provisions in the Telephone Consumer Protection Act relating to faxed advertisements do not use the term "prior express consent." Rather, the provisions allow transmission of unsolicited faxes on the basis of "an established business relationship." *Compare* 47 U.S.C. § 227(b)(1)(A) ("prior express consent"), *with* 47 U.S.C. § 227(b)(1)(C) ("established business relationship"). Defendant does not explain why Congress's decision to identify specifically how a consumer may stop unwanted faxed advertisements from a business with whom he has an "established business relationship" should act as a limit on consumers who wish to stop receiving autodialed calls from someone to whom they previously gave "prior express consent."

Second, even if "established business relationship" should be interpreted in the same way as "prior express consent," Congress's decision to impose particular requirements regarding faxed advertisements does not mean that Congress intended to limit opt-out options for autod-

ialed calls and other prohibited conduct under the Telephone Consumer Protection Act. In fact, as defendant recognizes in its brief, the Federal Communications Commission has imposed particular opt-out requirements for telemarketing calls under the Act, despite the fact that Congress included no opt-out provisions regarding telemarketing calls in the statute itself. Dft.'s Br., dkt. # 73, at 18; Rules and Regulations Implementing the TCPA of 1991, 77 FR 34233–01 (June 11, 2012). The statute's opt-out provisions regarding faxed advertisements and the FCC's opt-out requirements for telemarketing calls simply make it easier for consumers to stop unwanted advertisements; however, the specific opt-out provisions do not change common law notions of consent and revocation.

Defendant also has identified no language in the statute that would require consumers to revoke consent in writing, rather than orally. Under traditional notions of consent, revocation is sufficient so long as the actor "knows or has reason to know that the other is no longer willing for him to continue the particular conduct." *Restatement (Second) of Torts* § 892A. Writing is not required. Additionally, I am not persuaded by the decisions in *Starkey, Cunningham, Moore, Moltz* and *Sengenberger* that the writing requirements of the Fair Debt Collection Practices Act should be imported to the Telephone Consumer Protection Act.

The two statutes contain different requirements and a debt collector may be subject to the requirements of both. However, there is nothing in the language of either statute suggesting that the "cease and desist" requirement of the Fair Debt Collection Practices Act should override the traditional notions of "consent" included in the Telephone Consumer Protection Act. The statutory schemes do not conflict.

As the court explained in *Adamcik*, 832 F.Supp.2d at 749, "[a]n FDCPA request to cease communications differs in scope and operation from a TCPA revocation of consent." Under the Fair Debt Collection Practices Act, debt collectors are free to make non-abusive efforts to contact debtors until the debtor asks the debt collector in writing to cease and desist its collection efforts. 15 U.S.C. § 1692c(c). The cease and desist letter is broad and prohibits virtually all communications from the debt collector to the debtor. Under the Telephone Consumer Protection Act, no one may use automatic dialer or prerecorded voice systems to call cellular phones for any reason unless and until the consumer consents to such calls. 47 U.S.C. § 227. When a consumer "revokes" consent under § 227(b), the result is to reinstate the statute's prohibition on the use of automatic dialer or prerecorded calls to the consumer's cellular phone. Because these statutory schemes address different situations and can be applied without conflict, there is no reason to impose the writing requirements of the Fair Debt Collection Practices Act on plaintiff.

In sum, I conclude that consumers can revoke their consent to receive autodialer calls under the Telephone Consumer Protection Act and may do so orally. In her brief in response to defendant's motion for summary judgment on this issue, plaintiff argues that the court should grant summary judgment to her on her Telephone Consumer Protection Act claims with respect to the 27 calls and two prerecorded messages that defendant made to her cell phone after January 8, 2010. In its reply brief, defendant makes no arguments in opposition to this claim except the arguments about consent and revocation discussed already. In particular, defendant does not argue that plaintiff's statement to one of defendant's debt col-

lectors on January 8, 2010 that "she needed to stop calling" plaintiff was insufficient to provide notice to defendant that plaintiff was no longer willing to allow defendant to continue to call her using its autodialer system. Additionally, defendant does not suggest that it has other defenses to plaintiff's claims under the Act. Because defendant had an opportunity to respond to plaintiff's arguments about this claim, I conclude that it is appropriate to grant summary judgment to plaintiff on this issue. In sum, plaintiff has established that she successfully revoked her consent to be called by defendant's autodialer system on January 8, 2010 and is entitled to summary judgment with respect to the 27 calls and two voice messages left on her cell phone after that date.

Under 47 U.S.C. § 227(b)(3)(B), a plaintiff may "recover for actual monetary loss from . . . a violation, or . . . receive $500 in damages for each . . . violation, whichever is greater." In addition, "[i]f the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." In her response brief, plaintiff seeks statutory damages of $500 for each call and prerecorded message defendant made to her cell phone after January 8, 2010. In addition, she asks the court for treble damage for knowing or willful violations.

Defendant does not dispute plaintiff's evidence that defendant called her cell phone 27 times and left two prerecorded messages for her after January 8, 2010. In addition, defendant does not respond to plaintiff's argument that she can recover separately for each call and each prerecorded message, so that issue is waived.

Accordingly, I conclude that plaintiff is entitled to $13,500 for the 27 calls and $1,000 for the two prerecorded messages made after January 8, 2010.

With respect to enhanced damages, plaintiff did not develop any argument that she is entitled to them, stating only that defendant "willingly and knowingly called [her] and left pre-recorded messages on her cellular phone." Plt.'s Br., dkt. # 66, at 65. She does not explain why she believes defendant acted knowingly or willfully or even attempt to define those words. Accordingly, I am denying plaintiff's request for treble damages. This issue will remain for trial.

## ORDER

IT IS ORDERED that

1. Plaintiff Terri Beal's motion to strike errata sheets, dkt. # 76, and motion for partial summary judgment, dkt. # 43, are DENIED.

2. Defendant Wyndham Vacation Resorts, Inc.'s motion to withdraw its statute of limitations argument with respect to plaintiff's Wisconsin Consumer Act claims, dkt. # 82, is GRANTED.

3. Defendant's motion for summary judgment, dkt. # 47, is GRANTED IN PART and DENIED IN PART. The motion is GRANTED with respect to the following claims:

a. Plaintiff's claim that defendant violated the Wisconsin Consumer Act and Wis. Stat. ch. 428 by reporting her debts to credit reporting agencies improperly, making false allegations in its state court complaint, failing to attach a copy of the timeshare agreement to the state court complaint, failing to provide plaintiff with a notice of default and right to cure before filing the state action and by seeking attorney fees in the state action.

b. Plaintiff's claim that defendant committed the torts of invasion of privacy and private nuisance by serving the state court complaint and summons at plaintiff's home.

c. Plaintiff's claims under the Telephone Consumer Protection Act premised on calls made before January 8, 2010.

The motion is DENIED in all other respects.

4. Plaintiff is GRANTED summary judgment on her claim that defendant violated the Telephone Consumer Protection Act by making 27 calls and leaving two prerecorded messages on her cellular phone after January 8, 2010. Plaintiff is AWARDED $14,500 in statutory damages under 47 U.S.C. § 227(b)(3)(B).