# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2017AP1408 |
| COMPLETE TITLE: | Security Finance,<br>        Plaintiff-Respondent,<br>   v.<br>Brian Kirsch,<br>        Defendant-Appellant-Petitioner. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 382 Wis. 2d 271,915 N.W.2d 730
(2018 – unpublished)

| | |
|---|---|
| OPINION FILED: | April 19, 2019 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | February 1, 2019 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Washington |
| JUDGE: | Todd K. Martens |

| | |
|---|---|
| JUSTICES: | |
| CONCURRED: | KELLY, J. concurs, joined by R.G. BRADLEY, J. (opinion filed). |
| DISSENTED: | A.W. BRADLEY, J. dissents, joined by ABRAHAMSON, J. (opinion filed). |
| NOT PARTICIPATING: | DALLET, J. did not participate. |

ATTORNEYS:

For the defendant-appellant-petitioner, there were briefs filed by *Briane F. Pagel*, and *Lawton & Cates, S.C.*, Madison. There was an oral argument by *Briane F. Pagel*.

For the plaintiff-respondent, there was a brief filed by *Lisa M. Lawless*, *Marci V. Kawski*, *Edward J. Heiser*, *Jr.*, and *Husch Blackwell LLP*, Milwaukee. There was an oral argument by *Lisa M. Lawless*.

An amicus curiae brief was filed on behalf of Legal Action of Wisconsin, Inc., by *Jessica Roulette*, *Gregory Myszkowski*,

*Elizabeth Stinebaugh*, *Nicole Zimmer*, and *Legal Action of Wisconsin, Inc*, Milwaukee.

An amicus curiae brief was filed on behalf of Credit Union National Association and Wisconsin Credit Union League, by *John W. Raihala* and *Clifford & Raihala, S.C.*, Madison.

An amicus curiae brief was filed on behalf of Legal Aid Society of Milwaukee, Inc., by *Karen M. Bauer*, *Dana M. Roth*, and *Legal Aid Society of Milwaukee, Inc.*, Milwaukee.

2

**2019 WI 42**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2017AP1408
(L.C. No. 2017SC271)

STATE OF WISCONSIN      :      IN SUPREME COURT

**Security Finance,**

    **Plaintiff-Respondent,**

    **v.**

**Brian Kirsch,**

    **Defendant-Appellant-Petitioner.**

**FILED**

**APR 19, 2019**

Sheila T. Reiff
Clerk of Supreme Court

---

REVIEW of a decision of the Court of Appeals. *Affirmed.*

¶1   ANNETTE KINGSLAND ZIEGLER, J.   This is a review of an unpublished decision of the court of appeals, Security Finance v. Kirsch, No. 2017AP1408, unpublished slip op. (Wis. Ct. App. Apr. 11, 2018), affirming the Washington County circuit court's order.[1] The order granted Security Finance's ("Security") motion to dismiss Brian Kirsch's ("Kirsch") counterclaims against Security arising under Wis. Stat. chs. 425 and 427 (2015-16).[2]

---

[1] The Honorable Todd K. Martens presided.

[2] All subsequent references to the Wisconsin Statutes are to the 2015-16 version unless otherwise indicated.

The court of appeals affirmed the circuit court, concluding that Kirsch's counterclaims were properly dismissed.

¶2 This court must consider whether a debtor who has been sued on a consumer credit transaction without first receiving a notice of right to cure default under ch. 425 may sue the creditor for damages under ch. 427, the Wisconsin Consumer Act ("WCA"). We conclude that a creditor's failure to provide such notice does not constitute a sufficient basis for relief under ch. 427. As a result, Kirsch's counterclaims were properly dismissed, and we affirm the court of appeals.

I. FACTUAL BACKGROUND AND PROCEDURAL POSTURE

¶3 Security and Kirsch entered into a loan agreement, whereby Security loaned Kirsch $1,000 and Kirsch agreed to pay it back with interest in 12 equal payments from July 1, 2016, to June 1, 2017. Kirsch defaulted on the payment obligation. On February 6, 2017, Security filed a small claims lawsuit against Kirsch to enforce the loan agreement and collect the alleged debt. Kirsch answered and counterclaimed, alleging that Security filed this action "seeking to collect money without, upon information and belief, serving defendant with a notice of right to cure default which satisfies the requirements laid out in [Wis. Stat. §§] 425.104 and [425.]105," seeking damages allowed under Wis. Stat. § 427.104. Specifically, Kirsch alleged that Security "has no right to file an action without first serving a sufficient notice of right to cure default," and that this failure "constitutes a violation of [§] 427.104(1)(g) . . . and a violation of [Wis. Stat.

2

§] 425.302." Thereafter, Security sought to voluntarily dismiss the complaint, without prejudice and Kirsch objected. The case was reopened, and Kirsch filed an amended answer and counterclaims which added a claim that Security violated § 427.104(1)(j).

¶4 Security moved to dismiss Kirsch's counterclaims. The circuit court granted the motion to dismiss, stating that Kirsch "baldly asserts that failure to provide proper notice of the right to cure default can constitute threatening or harassing behavior." The circuit court further stated that "[i]n general, the remedy for the violation alleged is dismissal without prejudice." The circuit court concluded that Kirsch made "no showing [he] would be entitled to any other remedy." The circuit court explained:

> In terms of the dismissal without prejudice, the defendant's counterclaim is moot, and the argument that the defendant is entitled to these additional remedies requires a . . . tortured interpretation of the statute and the facts, and that's not an interpretation that I am required to accept.

As a result, the circuit court dismissed the counterclaim relating to the notice of right to cure default.

¶5 The court of appeals affirmed the circuit court's dismissal. Kirsch, No. 2017AP1408, unpublished slip op., ¶¶1, 26.

¶6 The petition for review presented one issue:

> Whether a customer [who has been] sued on a consumer credit transaction without first receiving a notice of right to cure default may sue the merchant

3

for damages under chapter 427 of the Wisconsin Consumer Act?

¶7 This court's order granting Kirsch's petition for review provides that "pursuant to Wis. Stat. § (Rule) 809.62(6), [Kirsch] may not raise or argue issues not set forth in the petition for review unless otherwise ordered by the court."

## II. STANDARD OF REVIEW

¶8 Whether a complaint or a counterclaim "states a claim upon which relief can be granted is a question of law for our independent review; however, we benefit from discussions of the court of appeals and circuit court." Data Key Partners v. Permira Advisers LLC, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693 (citing DeBruin v. St. Patrick Congregation, 2012 WI 94, ¶10, 343 Wis. 2d 83, 816 N.W.2d 878).

¶9 In reviewing a motion to dismiss, this court accepts factual allegations in the complaint or counterclaim as true. Id., ¶18 (citing Strid v. Converse, 111 Wis. 2d 418, 422–23, 331 N.W.2d 350 (1983)). However, this court does not accept legal conclusions asserted in a complaint or counterclaim, "and legal conclusions are insufficient to withstand a motion to dismiss." Id. (citing John Doe 67C v. Archdiocese of Milwaukee, 2005 WI 123, ¶19, 284 Wis. 2d 307, 700 N.W.2d 180; Mitchell v. Lawson Milk Co., 532 N.E.2d 753, 756 (Ohio 1988)).

¶10 This case requires the interpretation and application of Wis. Stat. § 427.104 to determine if Kirsch's claim that Security violated § 427.104 by commencing an action against him before providing a notice of default and right to cure survives

Security's motion to dismiss.  "The interpretation and application of a statute present questions of law that this court reviews de novo while benefitting from the analyses of the court of appeals and circuit court." State v. Alger, 2015 WI 3, ¶21, 360 Wis. 2d 193, 858 N.W.2d 346 (citing State v. Ziegler, 2012 WI 73, ¶37, 342 Wis. 2d 256, 816 N.W.2d 238).

### III.  ANALYSIS

¶11 Kirsch argues that Security's failure to provide sufficient notice of right to cure required by Wis. Stat. §§ 425.104 and 425.105 constitutes a violation of Wis. Stat. § 427.104(1)(g) and (1)(j).  Because the petition for review concerns only the ch. 427 claim, we cabin our analysis to whether the ch. 425 failure to send sufficient notice of right to cure default can form the basis for a violation of ch. 427 of the WCA.[3]

¶12 Kirsch argues that he is entitled to relief under Wis. Stat. § 427.104 because Security filed the lawsuit against him

---

[3] We will not reach this new argument regarding liability for an independent Wis. Stat. ch. 425 claim because it was not raised in the petition for review, it was not raised in the counterclaim, and it was not argued to the circuit court.  We do however consider the issue raised in Kirsch's petition for review regarding ch. 427, but decline to consider any issues presented outside the petition for review.  We therefore need not consider any arguments regarding Kirsch's counterclaims arising under ch. 425 and decline to do so.  See, e.g., State v. Sholar, 2018 WI 53, ¶49, 381 Wis. 2d 560, 912 N.W.2d 89 (citing State v. Sulla, 2016 WI 46, ¶7 n.5, 369 Wis. 2d 225, 880 N.W.2d 659) ("A petitioner's arguments are limited to the issues on which we granted review, unless this court orders otherwise.").

without first sending a notice of right to cure under ch. 425. He argues that that dismissal is not the sole consequence for failing to provide notice because § 427.104 independently creates a cause of action for which § 427.105 provides a remedy. Kirsch's argument, however, fails to connect how a ch. 425 notice failure transforms into a prohibited practice under § 427.104(1)(g) or (1)(j).

¶13  We begin with the language of Wis. Stat. § 427.104(1). See State ex rel. Kalal v. Cir. Ct. for Dane Cty., 2004 WI 58, ¶45, 271 Wis. 2d 633, 681 N.W.2d 110 ("[S]tatutory interpretation begins with the language of the statute."). Section 427.104 states, in relevant part as follows:

> In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, including a transaction primarily for an agricultural purpose, where there is an agreement to defer payment, a debt collector may not:
>
> (a) Use or threaten force or violence to cause physical harm to the customer or the customer's dependents or property;
>
> (b) Threaten criminal prosecution;
>
> (c) Disclose or threaten to disclose information adversely affecting the customer's reputation for credit worthiness with knowledge or reason to know that the information is false;
>
> (d) Initiate or threaten to initiate communication with the customer's employer prior to obtaining final judgment against the customer, except as permitted by statute including specifically s. 422.404, but this paragraph does not prohibit a debt collector from communicating with the customer's employer solely to verify employment status or earnings or where an employer has an established debt counseling service or procedure;

(e) Disclose or threaten to disclose to a person other than the customer or the customer's spouse information affecting the customer's reputation, whether or not for credit worthiness, with knowledge or reason to know that the other person does not have a legitimate business need for the information, but this paragraph does not prohibit the disclosure to another person of information permitted to be disclosed to that person by statute;

(f) Disclose or threaten to disclose information concerning the existence of a debt known to be reasonably disputed by the customer without disclosing the fact that the customer disputes the debt;

(g) Communicate with the customer or a person related to the customer with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer;

(h) Engage in other conduct which can reasonably be expected to threaten or harass the customer or a person related to the customer;

(i) Use obscene or threatening language in communicating with the customer or a person related to the customer;

(j) Claim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist;

(k) Use a communication which simulates legal or judicial process or which gives the appearance of being authorized, issued or approved by a government, governmental agency or attorney-at-law when it is not;

(L) Threaten action against the customer unless like action is taken in regular course or is intended with respect to the particular debt; or

(m) Engage in conduct in violation of a rule adopted by the administrator after like conduct has been restrained or enjoined by a court in a civil action by the administrator against any person pursuant to the provisions on injunctions against false, misleading, deceptive or unconscionable agreements or conduct (ss. 426.109 and 426.110).

7

§ 427.104(1). The statute prohibits specific harassing or threatening conduct towards debtors.[4] Specifically, Kirsch claims that Security violated § 427.104(1)(g) and (1)(j) by failing to provide ch. 425 notice of right to cure. Section 427.104(1)(g) prohibits a creditor from "[c]ommunicat[ing] with the customer . . . with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer." Kirsch alleges that Security's filing suit without first providing a notice of right to cure in and of itself constitutes a prohibited communication under subsec.

---

[4] The Wisconsin Department of Financial Institutions ("WDFI") has provided commentary on the severity of Wis. Stat. ch. 427 violations. The WDFI cautions creditors, stating that "[w]hile you have a right to attempt to collect a legitimate debt owed you, Wisconsin law provides that there are certain things you cannot do in attempting to collect that debt . . . ." Wisconsin Dep't of Financial Insts., Prohibited Practices, https://www.wdfi.org/wca/business_guidance/creditors/debt_collec tion/prohibited_practices.htm (last visited Feb. 20, 2019). Prior to listing the threatening or harassing conduct prohibited by Wis. Stat. § 427.104(1), the WDFI states, "Though it may be tempting to 'cross the line' in attempting to collect a debt rightfully owed you, be aware that the following actions are illegal and may result in severe penalties." Id. The WDFI further addresses the definition of "harassment" in ch. 427 context, stating that "it usually means that a collector used obscene or threatening language with a consumer." Wisconsin Dep't of Financial Insts., WI Debt Collection Frequently Asked Questions, https://www.wdfi.org/wca/business_guidance/creditors/ debt_collection/faq.htm (last visited Feb. 20, 2019). The WDFI further states that harassment includes "calling the consumer names, demeaning the consumer's occupation, or questioning the decisions that led to the consumer's account being placed with a collection agency," along with calling a debtor before 8:00 a.m. or after 9:00 p.m., or calling a debtor with sufficient frequency. Id.

(1)(g).  Notably, Kirsch's counterclaim is completely devoid of any allegation that Security "[c]ommunicate[d] with [Kirsch] . . . with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass [Kirsch]."  In other words, the procedural defect of filing suit without first providing a notice of default and right to cure as outlined in ch. 425 does not create liability under § 427.104(1)(g) in the absence of "[c]ommunicat[ing] with the customer . . . with such frequency or at such unusual hours or in such a manner as can reasonably be expected to threaten or harass the customer."  Kirsch makes no such allegation.

¶14  Kirsch also claims that Security violated Wis. Stat. § 427.104(1)(j), which prohibits a creditor from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist." Kirsch alleges that Security's failure to provide a notice of default and right to cure in and of itself is a violation of § 427.104(1)(j).  The crux of Kirsch's claim is that Security "[c]laim[ed], attempt[ed] or threaten[ed] to enforce a right with knowledge or reason to know that the right does not exist" when it filed a lawsuit against him without providing the requisite ch. 425 notice of default and right to cure.  In so doing, Kirsch argues that Security could have no right to enforce the loan agreement until it complied with ch. 425's procedural requirements.  However, at the time that Security

9

filed its complaint, a valid and binding loan agreement had been defaulted upon under Wis. Stat. § 425.103(2)(a),[5] and money was due to Security. In other words, it had the "right" to enforce compliance with the agreement. Security, however, improperly failed to give Kirsch the requisite notice and the opportunity to "cure" before it filed suit. It jumped the gun. Kirsch then asserts that this procedural failure relieves him of all loan obligations and also entitles him to ch. 427 penalties. In other words, Kirsch argues that a failure to provide a ch. 425 notice of default and right to cure (1) relieves him of any obligation to pay the unpaid loan; (2) amounts to Security's relinquishment of any "right" to enforce the defaulted loan obligation; and thus, (3) entitles him to relief under ch. 427. Regarding the claim Kirsch makes here, however, the statutes do not state that a creditor relinquishes the "right" to enforce a

---

[5] Wisconsin Stat. § 425.103(2) states in relevant part as follows:

(2) "Default", with respect to a consumer credit transaction, means without justification under any law:

(a) With respect to a transaction other than one pursuant to an open-end plan and except as provided in par. (am); if the interval between scheduled payments is 2 months or less, to have outstanding an amount exceeding one full payment which has remained unpaid for more than 10 days after the scheduled or deferred due dates, or the failure to pay the first payment or the last payment, within 40 days of its scheduled or deferred due date; . . . .

§ 425.103(2)(a).

10

defaulted loan obligation if it does not provide proper ch. 425 notice.

¶15 Wisconsin Stat. § 421.201(6)(b), consistent with Wis. Stat. § 427.104(1)(j), provides that "[a] merchant may not enforce rights against the customer to the extent that the provisions of the agreement violate subsec. IV of ch. 422 or ch. 423." Kirsch does not allege that any provision of the loan agreement violates chs. 422 or 423. The word "right" refers to the rights, as here, contained in the loan agreement. It appears undisputed that Security sought to enforce the loan agreement, a "right," to enforce the unpaid loan obligation after default.

¶16 The notice provision statute in ch. 425 does not provide for a penalty for noncompliance arising under any specific WCA subsection, other than the fact that a complaint is not to be filed before notice is properly given.[6] Indeed, ch. 425 does otherwise contain penalty provisions in other sections, but not for failure to comply with such notice requirements. The WCA statutes provide no other provision entitling this debtor to relief, other than that of dismissal of an improperly filed complaint.

---

[6] We note that Wis. Stat. § 425.302 states that it "applies to all violations for which no other remedy is specifically provided." § 425.302(2). However, as will be discussed below, Wis. Stat. § 427.105 provides a specific remedy for a Wis. Stat. § 427.104 violation, and the scope of this appeal is limited to Kirsch's § 427.104 claim. We therefore decline to further address § 425.302.

11

¶17 Kirsch does not petition this court to review whether other penalties might be available to him.  Instead, he claims that a creditor's duty to provide a notice of default and right to cure under ch. 425 entitles him to the significant penalties available for a ch. 427 violation.  Wisconsin Stat. §§ 425.104 and 425.105 establish a creditor's requirement to issue a debtor a notice of default and right to cure prior to filing suit against the debtor.   Under § 425.104(1), "A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (s. 425.105)." Section 425.105(1) states as follows:

> A merchant may not accelerate the maturity of a consumer credit transaction, commence any action except as provided in s. 425.205(6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

¶18 Since it is undisputed that Security was to first provide notice before commencing this action, Kirsch was entitled to dismissal of the action without prejudice.  Notably, the language of Wis. Stat. §§ 425.104 and 425.105 does not specifically provide a remedy or penalty for a creditor's failure to comply with either section.  While other sections of ch. 425 expressly provide for remedies and penalties arising under Wis. Stat. §§ 425.302 through 425.304, Kirsch does not

12

petition this court for review of relief available due to any such sections of ch. 425.[7] Rather, Kirsch seeks relief under ch. 427.

¶19 The parties do not dispute that Security failed to properly comply with the notice of default and right to cure provisions of ch. 425. Kirsch, however, seeks to shoehorn Security's failure to comply with ch. 425 into a ch. 427 violation in order to recover the significant remedies and penalties ch. 427 imposes. The sort of threatening and harassing conduct which violates Wis. Stat. § 427.104 entitles one to "actual damages and the penalty provided in s. 425.304," but goes further to provide for "damages caused by emotional distress or mental anguish with or without accompanying physical injury proximately caused by a violation of this chapter." Wis. Stat. § 427.105(1). Section 427.105 is the only section in the entire WCA where damages for emotional distress or mental anguish are mentioned. Given that § 427.104 addresses creditors

---

[7] See Wis. Stat. § 425.107 (providing for remedies and penalties under Wis. Stat. § 425.303 where a consumer credit transaction is unconscionable); Wis. Stat. § 425.108 (regarding extortionate extensions of credit, provides that such extensions are unenforceable and for triple the penalty provided under Wis. Stat. § 425.304(1)).

Wisconsin Stat. § 425.304 states that a person who violates the WCA in a manner covered by the section is liable for "the greater of: (1) Twice the amount of the finance charge in connection with the transaction, except that the liability under this subsection shall not be less than $100 nor greater than $1,000; or (2) The actual damages, including any incidental and consequential damages. . . ."

13

that harass or threaten debtors, it is hardly a surprise that a violation of § 427.104 would allow for emotional distress or mental anguish damages in addition to the remedies and penalties provided by Wis. Stat. § 425.304.  Indeed, punishment for violations of § 427.104(1) addresses egregious behavior by creditors directed toward debtors and thus provides debtors with greater remedies and penalties.  By stark contrast, procedural errors such as pleading defects are treated much differently, as creditors face significantly less potential exposure under ch. 425 for such miscues.[8]  While a failure to provide a notice of default and right to cure is not expressly linked with a statutory remedy under the WCA, the WCA's proportionate treatment of differing violations supports a conclusion that the procedural deficiency Kirsch complains of does not fall under § 427.104, and does not lead to the harsh penalties imposed by §§ 427.105 and 425.304.

¶20 Relevant case law further indicates that a failure to comply with ch. 425's procedural requirement to notice and the right to cure does not automatically eliminate a creditor's ability to enforce a loan agreement and does not, in and of itself, constitute a ch. 427 violation.  Wisconsin courts and

---

[8] See Wis. Stat. § 425.109(4) (stating that failure to comply with pleading requirements is not a violation of chs. 421 to 427, but providing that attorney fees under Wis. Stat. § 425.308 may be awarded if the debtor "establishes by a preponderance of the evidence that the failure to comply was willful or intentional").

14

federal courts have recognized the distinction between a failure to comply with the procedural requirements imposed by ch. 425 and conduct which violates ch. 427.

¶21 In Beal v. Wyndham Vacation Resorts, 956 F. Supp. 2d 962 (W.D. Wis. 2013), a debtor purchased "timeshare points," making a down payment and financing the remainder of the purchase price through a credit agreement with a creditor. The debtor stopped making payments shortly thereafter. Id. at 966. The creditor eventually sued the debtor in the Sauk County circuit court, seeking a declaration of interest in real estate and a foreclosure judgment against the debtor. Id. at 967. However, prior to commencing the action, the creditor failed to send the debtor a notice of default and right to cure letter as required by Wis. Stat. §§ 425.104 and 425.105. Id. The debtor filed a motion for summary judgment on those grounds, and the circuit court granted the debtor's motion, dismissing the matter. Id. The debtor then sued the creditor in federal court claiming, among other things, that the debtor was entitled to damages because the creditor violated Wis. Stat. § 427.104(1)(j) by failing to provide the debtor a notice of default and right to cure prior to commencing the action against her. Id. at 968-69. Both parties moved for summary judgment on the debtor's § 427.104(1)(j) claim and others. Id.

¶22 The district court granted the creditor's motion for summary judgment on the debtor's Wis. Stat. § 427.104 claim. Id. at 970. The court explained that "the requirement that a creditor provide a notice of right to cure default is a

15

procedural hurdle creditors must clear in order to pursue their remedies." Id. at 969 (emphasis added) (citing Wis. Stat. § 425.105). Quoting the Wisconsin court of appeals' decision in Rosendale State Bank v. Schultz, 123 Wis. 2d 195, 365 N.W.2d 911 (Ct. App. 1985), the district court further stated, "The purpose of the notice of right to cure 'is to give the customer an opportunity, before the merchant accelerates the obligation, to restore his or her loan to a current status and thus preserve the customer-merchant relationship.'" Beal, 956 F. Supp. 2d at 969 (quoting Rosendale, 123 Wis. 2d at 199). Therefore, the district court stated that "the appropriate remedy for a creditor's failure to comply with these procedural requirements is dismissal of the creditor's action, which is what happened to [the creditor's] action against [the debtor] in the Circuit Court for Sauk County." Id. Because the debtor secured dismissal of the creditor's circuit court action, she "received the relief to which she is entitled under these provisions." Id. at 970. In other words, the district court concluded that the creditor retained the right to payment from the debtor regardless of whether the creditor complied with the WCA's notice of default and right to cure requirements. Accordingly, the debtor had no remedy under § 427.104(1)(j).

¶23 The court of appeals recognized a similar distinction between chs. 425 and 427 violations in Credit Acceptance Corp. v. Kong, 2012 WI App 98, 344 Wis. 2d 259, 822 N.W.2d 506. In Kong the defendant purchased a vehicle, making a down payment and borrowing the remainder of the purchase price. Id., ¶2.

16

After the defendant had stopped making payments but 10 days before the defendant was in default under the WCA, the creditor prematurely sent the defendant a notice of default and right to cure letter. Id., ¶¶4-5, 13. The creditor then repossessed the defendant's vehicle and subsequently commenced an action against the defendant seeking a deficiency judgment for the remainder of the purchase price. Id., ¶5. The defendant counterclaimed, asserting WCA violations. Id. The circuit court concluded that the creditor violated the WCA, and awarded damages which included a $1,000 statutory penalty for a violation of Wis. Stat. § 427.104. See id., ¶6.

¶24 The court of appeals affirmed the circuit court, but modified the judgment to remove the $1,000 statutory penalty. Id., ¶18. The court of appeals concluded that the notice of default and right to cure was "invalid" because it was prematurely issued, meaning that the creditor "was not entitled to engage in self-help repossession of the vehicle." Id., ¶¶13-14. The court of appeals thus concluded that the creditor violated Wis. Stat. § 425.206,[9] and that the defendant was entitled to damages under Wis. Stat. §§ 425.305 and 425.308. Id., ¶¶14, 16-17. However, the court of appeals concluded that

---

[9] Wisconsin Stat. § 425.206 is titled, "Nonjudicial enforcement limited," and restricts the circumstances in which a creditor "may take possession of collateral or goods subject to a consumer lease," providing that a violation of the section is subject to remedies and penalties under Wis. Stat. § 425.305. Section 425.206 appears today as it did when Credit Acceptance Corp. v. Kong, 2012 WI App 98, 344 Wis. 2d 259, 822 N.W.2d 506, was decided.

the creditor did not violate any provision of Wis. Stat. § 427.104. Id., ¶18. Addressing the defendant's § 427.104 claim, the court stated that "beyond imposing the statutory penalty, the circuit court's written orders do not specify in what prohibited debt collection practice [the creditor] engaged." Id. The court of appeals further noted that the defendant had "not offered any explanation or defense of the court's $1,000 statutory damages award." Id. Accordingly, the court of appeals concluded that the defendant was not entitled to any relief under Wis. Stat. § 427.105. Id.

¶25 Thus, like the district court in Beal, the court of appeals in Kong concluded that the creditor violated ch. 425 by sending a noncompliant notice of default and right to cure, but similarly declined to impose concurrent ch. 427 liability. Kong, like Beal, thus stands for the proposition that a failure to provide a notice of default and right to cure does not destroy a creditor's right to enforce a debt in default. Therefore, under Beal and Kong, a mere violation of Wis. Stat. §§ 425.104 and 425.105 does not automatically lead to a Wis. Stat. § 427.104(1)(j) violation.

¶26 Kirsch relies on this court's decision in Kett v. Community Credit Plan, Inc., 228 Wis. 2d 1, 596 N.W.2d 786 (1999), which also addresses a replevin action, in his attempt to shoehorn a failure to comply with Wis. Stat. §§ 425.104 and 425.105 into a Wis. Stat. § 427.104 violation. Specifically, he claims that under Kett, courts are to apply a "broad scope to the kinds of claims that can be litigated under chapter 427."

18

¶27  In Kett a creditor brought replevin actions in the Milwaukee County circuit court against four debtors. Kett, 228 Wis. 2d at 4.  The circuit court initially granted default replevin judgments to the creditor.  Id.  Based on those default judgments, the creditor repossessed the debtors' vehicles.  Id. After the creditor took possession of the vehicles, the circuit court vacated the replevin judgments because the actions were commenced in an improper venue.  Id.  The debtors filed suit against the creditor, asserting (1) that the creditor violated Wis. Stat. § 425.206 by bringing suit in the wrong venue; and (2) that the creditor violated Wis. Stat. § 427.104(1)(h) and (1)(j) by repossessing vehicles it knew or should have known it had no right to repossess.  Id. at 4-5.  A violation of § 425.206 could give rise to damages under Wis. Stat. § 425.305, whereas a violation of § 427.104 could lead to damages under Wis. Stat. §§ 427.105 and 425.304.  Id. at 5, 23-24.  Regarding the § 427.104 claims, the court of appeals concluded that the creditor violated both §§ 425.206 and 427.104 as a matter of law, and this court affirmed.  Id. at 6-7, 23-24, 54.  Regarding the § 427.104 claim in particular, this court concluded that the creditor should have known that it would have no right to enforce the replevin judgments in Milwaukee County, and thus that it violated § 427.104 in attempting to do so.  Id. at 25-26.

¶28  Kett is uninstructive to our analysis because it is distinguishable from this case for two important reasons. First, in Kett, this court was faced with a venue issue, not

19

with a claim that the creditor violated Wis. Stat. §§ 425.104 or 425.105 by failing to provide a notice of default and right to cure.  A claim of improper venue is not the same as a claim that a creditor failed to provide a notice of default and right to cure.  In Kett the debtors in essence claimed that though the creditor may have had the right to sue them on the loans, the creditor did not have the right to do so in Milwaukee County.  Therefore, in Kett, the creditor lacked the right to sue in Milwaukee County despite presumably fulfilling the procedural requirements of §§ 425.104 and 425.105.[10]  Kett does not stand for the proposition that a failure to provide a notice of default and right to cure violates Wis. Stat. § 427.104(1)(j).  Here, there is no dispute that the action was commenced in the proper venue, and this court's holding in Kett is thus inapposite to this case.

¶29 Second, Kett is distinguishable because it involved three replevin actions where the creditor actually obtained replevin judgments and then physically repossessed the vehicles before the circuit court vacated the judgments.  The debtors' claims in Kett in large part centered around the creditor's "nonjudicial enforcement" of the debts, as described in Wis. Stat. § 425.206.  While the creditor in Kett engaged in acts that went well beyond the mere filing of an action, here,

---

[10] Our presumption is based on the fact that the debtors in Kett v. Community Credit Plan, Inc., 228 Wis. 2d 1, 596 N.W.2d 786 (1999), never claimed that the creditor failed to provide a notice of default and right to cure.

20

Security voluntarily dismissed its action on a consumer credit debt prior to obtaining or attempting to enforce any judgment. Unlike the creditor in Kett, Security did not obtain a judgment from the circuit court and could not have taken any steps to repossess any property as the creditor did via replevin in Kett. Kett's holding regarding Wis. Stat. § 427.104 is limited to situations where a replevin judgment is obtained and enforced in an improper venue. This court's decision in Kett is materially distinguishable from this case, and we see no reason to extend Kett's limited holding to this factually and procedurally distinct set of circumstances.

¶30 We therefore rely on the WCA's plain language, along with Beal and Kong, and reject an application of Kett in this case. The parties do not dispute that Kirsch took a loan from Security and agreed to timely pay back the loan with interest according to the loan agreement. Like the debtors in Beal and Kong, Kirsch does not claim that he timely made all required payments, nor does he claim that he cured any default. Rather, Kirsch asserts the same Wis. Stat. § 427.104 claim as the debtors in Beal and Kong on the same exact grounds. Like the courts in Beal and Kong, we conclude that Security's failure to send a notice of default and right to cure letter was merely a failure to comply with a procedural requirement that warranted dismissal of Security's action against Kirsch. Such a failure did not disrupt Security's right to payment from Kirsch as did the creditor's failure to sue in the proper venue in Kett. While Kirsch was entitled to dismissal of Security's action

21

against him, Kirsch's counterclaims fail to state a claim for additional relief under § 427.104(1)(j).

IV. CONCLUSION

¶31 This court must consider whether a debtor who has been sued on a consumer credit transaction without first receiving a notice of right to cure default under Wis. Stats. ch. 425 may sue the creditor for damages under Wis. Stats. ch. 427, the Wisconsin Consumer Act. We conclude that a creditor's failure to provide such notice does not constitute a sufficient basis for relief under ch. 427. As a result, Kirsch's counterclaims were properly dismissed and we affirm the court of appeals.

*By the Court.*—The decision of the court of appeals is affirmed.

¶32 REBECCA FRANK DALLET, J., did not participate.

¶33 DANIEL KELLY, J. *(concurring)*. Distinguishing between cases is about more than interferometry; we don't simply overlay the specifics of one case on another and pronounce them distinguished if they imprecisely map each other. As law school professors are wont to say, all cases are distinguishable, if for no other reason than that they involve different parties. A meaningful distinction, on the other hand, is one in which a logical hitch prevents the lessons of a prior case from applying to the one at bar. Comparing this case to Kett v. Community Credit Plan, Inc.[1] reveals no such hitch. So we should be governed by Kett, or we should overrule it to the extent it is inconsistent with our conclusion. Either of those options is better than the one we chose, which was to say that our holding and Kett can co-exist without creating cognitive dissonance. They cannot. Because I believe Kett wrongly decided the application of Wis. Stat. § 427.104, I join all of the court's opinion except the part addressing that case.

¶34 The question both here and in Kett is whether a creditor trying to collect a debt arising from a consumer credit transaction engaged in collection practices prohibited by Wis. Stat. § 427.104. In Kett, the debtor claimed the creditor (Community Credit) filed its claim in a venue other than one authorized by Wis. Stat. § 421.401(1). So, it said, Community Credit "[e]ngage[d] in . . . conduct which can reasonably be expected to threaten or harass the customer or a person related

_____

[1] 228 Wis. 2d 1, 596 N.W.2d 786 (1999).

1

to the customer . . . ." in violation of § 427.104(1)(h). 228 Wis. 2d 1, 24, 596 N.W.2d 786 (1999) (quoting § 427.104(1)(h)) (internal marks omitted). It also said Community Credit "[c]laim[ed], or attempt[ed] or threaten[ed] to enforce a right with knowledge or reason to know that the right does not exist." Id. (quoting § 427.104(1)(j)) (internal marks omitted). The court of appeals, we noted, "concluded that Community Credit had a duty to know that Milwaukee County was not the proper venue and that Community Credit's filing of a replevin action in Milwaukee County was an attempt to enforce a right it had reason to know did not exist." Id. at 25. We then said that "Community Credit has set forth no reason that persuades this court that the court of appeals erred in concluding that Community Credit engaged in prohibited debt collection practices as a matter of law by attempting to enforce a right it had reason to know did not exist." Id. at 26. Consequently, we held that Community Credit had violated §§ 427.104(1)(h) and (j), thereby entitling Kett to damages under § 427.105. So Kett's lesson is that a procedural mistake——filing in the wrong venue[2]——means the creditor had no right that it could enforce against the debtor. That is to say, the right would have existed if the creditor had filed in the correct venue, but filing in the wrong venue eliminated the right.

---

[2] State v. Dombrowski, 44 Wis. 2d 486, 502, 171 N.W.2d 349 (1969) (citing Black's Law Dictionary (4th ed.), 'venue' pp. 1727, 1728 ("[Venue] is a matter of procedure[.]").

2

¶35 Here, as in Kett, the error giving rise to Mr. Kirsch's claim was procedural. Specifically, he claimed Security Finance filed its collection action without first giving him written notice of his right to cure the default, as required by Wis. Stat. § 425.104(1). Our statutes provide that, if the creditor doesn't give that notice, it may not file the collection action: "A merchant may not . . . commence any action . . . unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 . . . ." Wis. Stat. § 425.105(1)  As in Kett, Mr. Kirsch claims this failure meant Security Finance lacked a right capable of being enforced by the complaint. Therefore, he argued, it must necessarily follow that Security Finance "[c]laim[ed], or attempt[ed] or threaten[ed] to enforce a right with knowledge or reason to know that the right does not exist" in violation of § 427.104(1)(j). We disagreed with Mr. Kirsch, and rightly so, because "[t]he word 'right' refers to the rights . . . contained in the loan agreement. It appears undisputed that Security sought to enforce the loan agreement, a 'right,' to enforce the unpaid loan obligation after default." Majority op., ¶15. Consequently, Security Finance undoubtedly had a "right" within the meaning of § 427.104(1)(j) when it filed its complaint, even though the filing was premature.

¶36 So here is the problem. We held in this case that the "right" identified in Wis. Stat. § 427.104(1)(j) is a contract right, and it doesn't go away just because the creditor fails to

3

follow the proper procedure in bringing its enforcement action. Majority op., ¶¶2, 31 ("[A] creditor's failure to provide such notice does not constitute a sufficient basis for relief under ch. 427."). But in Kett we said otherwise. We said that Community Credit's failure to file its action in the correct venue meant it was trying to enforce a right it did not have. That can only be true if: (1) the "right" to which § 427.104(1)(j) refers is the right to file the suit, not a contract right; or (2) a procedural error can extinguish a contract right. The first possibility conflicts with our holding today because we explicitly said that the statutory term "right" refers to a contract right. The second possibility also conflicts with our holding because we said that Security Finance's procedural error did not extinguish its contract right. So § 427.104(1)(j) either penalizes a procedurally flawed complaint (Kett), or it doesn't (Security Finance). Both propositions cannot be true simultaneously.

¶37 But the court tries. In an attempt to distinguish the two cases, it says "[a] claim of improper venue is not the same as a claim that a creditor failed to provide a notice of default and right to cure." Majority op., ¶28. Yes, that is true——proper venue is not the same thing as proper notice. The former governs where the suit may be filed. The latter governs whether it may be filed at all. But nothing in the opinion explains why Wis. Stat. § 427.104(1)(j) applies to one of the procedural errors but not the other. And if this is a matter of comparative gradation, I should think that filing a premature

4

complaint is a significantly more egregious error than filing a timely complaint in the wrong county.

¶38 The court also believes it can distinguish Kett on the ground that Community Credit used the judgments obtained in the wrong venue to repossess collateral that had secured the loans. It says "[t]he debtors' claims in Kett in large part centered around the creditor's 'nonjudicial enforcement' of the debts, as described in Wis. Stat. § 425.206." Majority op., ¶29. True enough——that's where the debtors focused. But the court focused on the improper venue chosen by the creditor. We said the court of appeals reached the correct conclusion in deciding that "Community Credit had a duty to know that Milwaukee County was not the proper venue and that Community Credit's filing of a replevin action in Milwaukee County was an attempt to enforce a right it had reason to know did not exist." Kett, 228 Wis. 2d at 25. The debtors may have been interested in the collateral, but we were interested in the venue.[3] This is not a basis for distinguishing the cases.

¶39 I think the court's opinion today correctly analyzes the relationship between procedural errors and Wis. Stat. § 427.104(1)(j). But I don't think that reasoning can co-exist

---

[3] So was the court of appeals. It said the creditor "had a duty to know that Milwaukee County was not the proper place of trial," and "[a]s the creditor, it is in a much better position than the customer to investigate matters such as appropriate venue." Kett v. Community Credit Plan, Inc., 222 Wis. 2d 117, 135, 586 N.W.2d 68 (Ct. App. 1998). So it concluded the creditor had reason to know that it was enforcing a right it did not have in violation of Wis. Stat. § 427.104(1)(j). Id. at 134.

with Kett.  So I would overrule Kett to the extent it holds that a creditor who files an enforcement action in the wrong venue violates § 427.104(1)(j).  I join all other aspects of the court's opinion.

¶40  I am authorized to state that Justice REBECCA GRASSL BRADLEY joins this concurrence.

¶41 ANN WALSH BRADLEY, J. *(dissenting).* An imbalance occurs when the middle class, the poor and the powerless are held accountable while the monied and powerful are able to act with impunity. The Wisconsin Legislature tried to address such an imbalance when in 1971 it enacted the Wisconsin Consumer Act (WCA).

¶42 Heralded as "the most sweeping consumer credit legislation [then] enacted in any state," its intent is "clearly . . . to assist customers, particularly those of limited means, in combating unfair business practices." Kett v. Community Credit Plan, Inc., 228 Wis. 2d 1, ¶31 n.15, 596 N.W.2d 786 (1999) (citations omitted). To that end, the legislature mandated that if a debt collector gives the consumer a notice with an opportunity to cure a default, then the notice must fulfill certain criteria lest the debt collector not obtain the right to "go to court."

¶43 When Security Finance tried to collect a $1000 debt from Brian Kirsch, it did so after violating this notice provision of the WCA.[1] Specifically, it did not provide Kirsch with a statutorily-compliant notice of right to cure.

¶44 Nevertheless, the majority pardons Security Finance's error and allows it to escape accountability for putting Kirsch

---

[1] For purposes of our review, we accept the allegations of Kirsch's counterclaims as true. See Hausman v. St. Croix Care Center, 214 Wis. 2d 655, ¶10, 571 N.W.2d 393 (1997). Security Finance appears to argue in its brief that if any mistake was made with the notice of right to cure, that it was de minimis. Nevertheless, in response to Kirsch's counterclaims, Security Finance voluntarily dismissed its complaint.

through a lawsuit that should never have been filed. In so doing, it arrives at a determination that is irreconcilable with the language of Kirsch's loan agreement and our case law.

¶45 The majority's conclusion also flies in the face of the stated purpose of the WCA, which "was designed to protect consumers from unfair, deceptive, and unconscionable merchant practices . . . ." Credit Acceptance Corp. v. Kong, 2012 WI App 98, ¶8, 344 Wis. 2d 259, 822 N.W.2d 506. Instead, the majority creates a perverse incentive for debt collectors to sue consumers without providing the proper notice and right to cure. Many defendants will not fight back,[2] and when they do the suit will be simply dismissed without prejudice and the debt collector allowed to refile with absolutely no consequence.[3]

¶46 Unlike the majority, I would give the WCA the teeth the legislature intended it to have. In my view, Security Finance's attempt to enforce a right with reason to know that the right did not exist constitutes a violation of Wis. Stat.

---

[2] See Mary Spector, Debts, Defaults, and Details: Exploring the Impact of Debt Collection Litigation on Consumers and Courts, 6 Va. L. & Bus. Rev. 257, 271-72 (2011) ("While the rules vary by state, and even within states, one thing is clear: the rate of default judgments in consumer debt collection cases is reported to have reached 95% and may be double the default judgment rate in debt cases generally.").

[3] As amicus Legal Aid Society of Milwaukee details, even a dismissed lawsuit can have decidedly negative consequences for a consumer. The record of a dismissed suit is still publicly available on CCAP, "an internet accessible case management system provided by Wisconsin Circuit Court Access program." See State v. Wayerski, 2019 WI 11, ¶20 n.10, 385 Wis. 2d 344, 922 N.W.2d 468. Such information is available to potential employers, landlords, and the public at large.

§ 427.104(1)(j).[4] Specifically, Security Finance attempted to enforce a right to go to court to obtain a judgment despite reason to know that absent compliance with the notice provisions of the WCA, such a right did not exist.

¶47 The majority errs in determining that Kirsch fails to state a claim against Security Finance for violation of Wis. Stat. § 427.104(1)(j). This erroneous determination is inconsistent with the parties' loan agreement, our case law and the legislature's stated purposes in enacting the WCA. Accordingly, I respectfully dissent.

I

¶48 Kirsch entered into a consumer loan agreement with Security Finance whereby Security Finance loaned Kirsch $1,000. Majority op., ¶3. Subsequently, Security Finance alleged that Kirsch defaulted on the loan and brought a small claims action against him. Id. However, it did so without providing a statutorily compliant notice of right to cure default pursuant to Wis. Stat. §§ 425.104[5] and 425.105.[6] Id.

---

[4] Wisconsin Stat. § 427.104(1)(j) provides in relevant part: "In attempting to collect an alleged debt arising from a consumer credit transaction or other consumer transaction, . . . a debt collector may not: . . . [c]laim, or attempt or threaten to enforce a right with knowledge or reason to know that the right does not exist . . . ."

[5] Wisconsin Stat. § 425.104 sets forth:

(1) A merchant who believes that a customer is in default may give the customer written notice of the alleged default and, if applicable, of the customer's right to cure any such default (s. 425.105).

(continued)

3

¶49 Kirsch filed counterclaims against Security Finance, arguing that under the WCA it "has no right to file an action without first serving a sufficient notice of right to cure default." Id. Accordingly, based on this violation, he sought damages pursuant to the WCA. See id.

¶50 Security Finance voluntarily dismissed its complaint and moved to dismiss Kirsch's counterclaims. The circuit court granted the motion and the court of appeals affirmed. Id., ¶¶4-5. Upholding the dismissal of Kirsch's counterclaims, the majority determines that a debt collector's failure to provide a proper notice of right to cure default "does not constitute a sufficient basis for relief under ch. 427." Id., ¶2.

---

(2) Any notice given under this section shall contain the name, address and telephone number of the creditor, a brief identification of the consumer credit transaction, a statement of the nature of the alleged default and a clear statement of the total payment, including an itemization of any delinquency charges, or other performance necessary to cure the alleged default, the exact date by which the amount must be paid or performance tendered and the name, address and telephone number of the person to whom any payment must be made, if other than the creditor.

[6] Pursuant to Wis. Stat. § 425.105(1),

A merchant may not accelerate the maturity of a consumer credit transaction, commence any action except as provided in s. 425.205(6), or demand or take possession of collateral or goods subject to a consumer lease other than by accepting a voluntary surrender thereof (s. 425.204), unless the merchant believes the customer to be in default (s. 425.103), and then only upon the expiration of 15 days after a notice is given pursuant to s. 425.104 if the customer has the right to cure under this section.

4

Specifically, in the majority's view Security Finance was not attempting to "enforce a right with knowledge or reason to know that the right does not exist" within the meaning of Wis. Stat. § 427.104(1)(j).  Id., ¶14.  Instead, it opines that the right that Security Finance was enforcing was the right to collect an unpaid balance on a loan.  Id.

## II

¶51 The majority begins its analysis on the wrong foot when it misclassifies the "right" Security Finance is attempting to enforce.  This initial misstep creates a skewed focus from which the majority opinion does not recover.

¶52 Wisconsin Stat. § 427.104(1)(j) prohibits debt collectors from "[c]laim[ing], or attempt[ing] or threaten[ing] to enforce a right with knowledge or reason to know that the right does not exist."[7]  It is of critical importance to correctly identify the "right" at issue because such identification frames the entirety of the analysis.

¶53 I begin with the plain language of the parties' consumer loan agreement.  Under the heading, **"RIGHTS UPON DEFAULT,"** the parties' loan agreement provides as follows:

> If you default and, after we send you a notice and opportunity to cure if required by § 425.105 Wis. Stats., we shall have the right to go to court and, to

---

[7] Violation of this subsection not only entitles the consumer to the statutory penalties provided by Wis. Stat. § 425.304, but also allows the consumer to recover "damages caused by emotional distress or mental anguish with or without accompanying physical injury proximately caused by" the violation. Wis. Stat. § 427.105(1).

5

the extent permitted by law, obtain a judgment against you for the then unpaid amount of your debt.

¶54 This language is unambiguous. It indicates that the "right" identified is not simply the right to collect the unpaid balance on the loan, as the majority determines, but the specific right "to go to court" to "obtain a judgment against" Kirsch.

¶55 Importantly, the right to go to court is a right that can be relinquished by contract,[8] and it is distinct from the underlying right to the unpaid balance of the loan in the event of a default. That is, the right to collect the unpaid loan balance is separate from the right to a particular forum for dispute resolution.

¶56 Security Finance had reason to know that it had no "right to go to court" to "obtain a judgment against" Kirsch because it did not satisfy the notice requirements set forth in Wis. Stat. §§ 425.104 and 425.105 and the parties' loan agreement. Under the WCA and the parties' loan agreement, the existence of Security Finance's "right to go to court" to "obtain a judgment against" Kirsch depended upon Security Finance sending statutorily-compliant notice and opportunity to cure default to Kirsch. As the majority acknowledges, Security

---

[8] For example, parties may contract to resolve disputes in arbitration as opposed to a court. See, e.g., J.J. Andrews, Inc. v. Midland, 164 Wis. 2d 215, 223-24, 474 N.W.2d 756 (Ct. App. 1991) ("The purpose of arbitration is to obtain a speedy, inexpensive and final resolution of disputes, and thereby avoid the expense and delay of a protracted court battle.") (citations omitted).

6

Finance failed to do so. In the majority's words, Security Finance "jumped the gun." See majority op., ¶14.

¶57 Nevertheless, Security Finance went to court in a premature attempt to obtain a judgment against Kirsch. This is a quintessential example of attempting to enforce a right that does not exist in violation of Wis. Stat. § 427.104(1)(j).

¶58 Not only does the majority's conclusion contravene the language of the loan agreement, but it also is inconsistent with our case law, specifically Kett, 228 Wis. 2d 1. In Kett, a creditor filed replevin actions against consumers in Milwaukee County Circuit Court and obtained default judgments. Id., ¶3. However, Milwaukee County was not the proper venue under the WCA. Id. Subsequently, the creditor repossessed the consumers' vehicles by nonjudicial recovery based upon the invalid default replevin judgments. Id.

¶59 The consumers brought separate lawsuits in Waukesha and Walworth Counties against the creditor for its alleged violations of the WCA. Id., ¶2. Each included allegations that the creditor had engaged in prohibited debt collection practices within the meaning of Wis. Stat. § 427.104(1)(j). Id., ¶¶4, 7.

¶60 This court concluded that the consumers had stated a valid claim. It reasoned that creditors do not have a right to file suit when they have not complied with necessary preconditions set forth in the WCA. Id., ¶¶43-50. More specifically, the creditor in Kett had reason to know that it had no right to pursue a replevin default judgment in Milwaukee County. Id., ¶50. Nevertheless, it obtained default judgments

7

in the wrong venue and enforced them by nonjudicial recovery. Id., ¶16.

¶61 I find the majority's attempt to distinguish Kett unconvincing, and instead conclude that Kett's reasoning applies in this case. Like the creditor in Kett that had reason to know it had no right to venue its actions in Milwaukee County, Security Finance had reason to know it had no "right to go to court" to "obtain a judgment against" Kirsch until it provided notice that complied with the WCA and the parties' loan agreement. By prematurely filing suit without providing that notice, Security Finance attempted to enforce a right it had reason to know did not exist in violation of Wis. Stat. § 427.104(1)(j).[9]

---

[9] This line of analysis was adopted by the federal district court in a case with facts very similar to those we address here. In Satran v. LVNV Funding, LLC, No. 17-cv-896-JDP, 2018 WL 2464486, at *1 (W.D. Wis. June 1, 2018), as in this case, the consumer alleged that the creditor commenced suit against the consumer without first providing the statutory notice of right to cure default, and in so doing, the creditor violated Wis. Stat. § 427.104(1)(j).

Framing the question as "whether a creditor has the 'right' to sue a debtor when it has not given notice of the right to cure default as required by section 425.105[,]" the district court determined that the consumer stated a claim. Id. at *4, 6. It arrived at its conclusion by applying Kett, explaining that "Kett simply held that creditors do not have a right to file suit when they haven't complied with a provision of the WCA." Id. at *6.

(continued)

8

¶62 Unlike the majority, I would follow Kett and the plain language of the parties' loan agreement. Accordingly, I conclude that Kirsch stated a claim against Security Finance for violation of Wis. Stat. § 427.104(1)(j).

III

¶63 In addition to being inconsistent with Kirsch's loan agreement and our case law, the majority opinion is likewise inconsistent with the purpose of the WCA.

¶64 As amicus Legal Action of Wisconsin correctly emphasizes, the WCA was intended to be a "sea-change" in the law.[10] The legislature's expressly stated purposes for enacting the WCA include protecting consumers "against unfair, deceptive, false, misleading and unconscionable practices" and "encourag[ing] the development of fair and economically sound

---

Further, the district court observed that under the same framework espoused by the majority here, "courts would have to determine whether each provision of the WCA affects a creditor's right to file suit or merely provides the debtor with a complete defense once the creditor does file suit." Id. I agree with the district court that the WCA "does not allow for this distinction." Id.

[10] See Ch. 239, Laws of 1971. For insightful commentary on the history of consumer protection law in Wisconsin and the drafting of the Wisconsin Consumer Act, see generally James D. Jeffries, Protection for Consumers Against Unfair and Deceptive Businesses, 57 Marq. L. Rev. 559 (1974); Thomas D. Crandall, The Wisconsin Consumer Act: Wisconsin Consumer Credit Laws before and after, 1973 Wis. L. Rev. 334 (1973); Edward J. Heiser Jr., Wisconsin Consumer Act: A Critical Analysis, 57 Marq. L. Rev. 389 (1974); and Jeffrey Davis, Legislative Restriction of Creditor Powers and Remedies: A Case Study of the Negotiation and Drafting of the Wisconsin Consumer Act, 72 Mich. L. Rev. 3 (1973).

consumer practices in consumer transactions." Wis. Stat. § 421.102(2)(b)-(c). At the time it was enacted, the WCA went "further to protect consumer interests than any other such legislation in the country," and was considered "the most sweeping consumer credit legislation [then] enacted in any state." Kett, 228 Wis. 2d 1, ¶31 n.15 (citations omitted).

¶65 Accordingly, the legislature directed courts to "liberally construe[]" the WCA to promote its "underlying purposes and policies." Wis. Stat. § 421.102(1). In particular, the legislature provided that consumer remedies should be "liberally administered to the end that the customer as the aggrieved party shall be put in at least as good a position as if the creditor had fully complied with [the WCA]." Wis. Stat. § 425.301(1).

¶66 Further, "[a] basic purpose of the remedies the legislature adopted in the Wisconsin Consumer Act is to induce compliance with the Wisconsin Consumer Act and thereby promote its underlying objects." Kett, 228 Wis. 2d 1, ¶36 (internal quotations and citation omitted). As a corollary to this principle, without the threat of a WCA remedy, a debt collector has no incentive to comply with its provisions.

¶67 Disregarding the legislature's stated purpose, the majority allows Security Finance to escape accountability for its violation of the WCA. With impunity, Security Finance has put Kirsch through a lawsuit that it had no right to bring. By being forced to vigorously defend Security Finance's defective suit, Kirsch is most certainly not "in at least as good a

position as if the creditor had fully complied with" the WCA. See Wis. Stat. § 425.301(1).

¶68 Simply dismissing the suit without prejudice provides no inducement to compliance with the WCA. See id. From a debt collector's perspective, why not file a lawsuit without providing the proper notice and right to cure? Often consumers will not respond.[11] In the rare instance when a consumer does fight back, the suit will simply be dismissed without prejudice and the debt collector free to refile without suffering any consequence.

¶69 In sum, I conclude that Kirsch stated a claim against Security Finance for engaging in a prohibited debt collection practice in violation of Wis. Stat. § 427.104(1)(j). Specifically, Security Finance attempted to enforce a right it had reason to know did not exist by attempting to exercise its "right to go to court" to "obtain a judgment against" Kirsch before providing proper notice of right to cure default as required by the WCA and the parties' consumer loan agreement.

¶70 For the reasons stated above, I respectfully dissent.

¶71 I am authorized to state that Justice SHIRLEY S. ABRAHAMSON joins this dissent.

---

[11] See n.2, supra.

11